## STATE v. HALL

No. 6588. Decided February 4, 1944. (145 P. 2d, 494.)

*Ray S. McCarty,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *Herbert F. Smart,* Asst. Atty. Gen., for respondent.

WOLFE, Chief Justice.

This case was decided in an opinion found in Utah, 139 P. 2d 228. A rehearing was granted and this opinion is the result of that rehearing.

The defendant, Ray Nuttall Hall, was convicted of the crime of grand larceny. On appeal he urges that the evidence is insufficient to sustain the conviction.

The information charged that the defendant stole from Strevell-Paterson Hardware Company one case of H-10 Champion Spark Plugs sometime between May 23rd and May 25th, 1942. The facts adduced show that about six weeks prior to the weekend of May 23rd, the date of the larceny charged in the information, another shipment of three cases of Champion Spark Plugs arrived in Salt Lake City for Strevell-Paterson. This shipment, which consisted of one case (500) Commercial 62's and two cases (1,000) H-10's, disappeared after it arrived at the docks of the Stordor Forwarding Company in Salt Lake City. This latter company handled l. c. l. shipments for various manufacturers including the Champion Spark Plug Company, and received this shipment for the purpose of delivering it to Strevell-Paterson. When these three cases disappeared, Strevell-Paterson ordered two cases of H-10's and one of Commercial 62's to replace them.

On Friday, May 22nd, these three replacement cartons arrived in Salt Lake City and were also received at the docks of the Stordor Forwarding Company. No attempt was made to deliver the plugs to Strevell-Paterson until Monday, May 25th. On Monday one of the cases of H-10 spark plugs was missing.

There is no evidence showing that anyone saw the defendant or anyone else take the spark plugs from the docks. The State, therefore, relied entirely on circumstantial evidence to prove all the elements of the crime. The defendant first asserts that the State failed to prove the corpus delicti. This contention is untenable. The evidence shows that these plugs were received on Friday,

that they were handled in the customary manner and that one of the three cases was missing on Monday. Some six weeks earlier another shipment consisting of three cases of spark plugs also disappeared from the same docks under similar circumstances. The fact that two shipments of plugs disappeared within a six week period tends to negative any inference that they may have been mislaid and to give weight to the theory that both shipments were stolen. These facts alone might be sufficient to prove the larceny by someone, but we need not rely on them alone. In a prosecution for larceny, it is not essential that the corpus delecti be established by evidence independent of the evidence which is adduced to prove that the defendant was the perpetrator of the crime. The same evidence may be used to prove both. *George* v. *United States*, 1 Okl. Cr. 307, 97 P. 1052, 100 P. 46; *State* v. *Marcy*, 189 Wash. 620, 66 P. 2d 846. Therefore, in addition to the above-stated evidence, we may consider the fact that at the time these plugs disappeared, it was very difficult for even a licensed wholesaler to purchase such plugs in lots of 500, and Strevell-Paterson had not had enough plugs for over a year to sell case lots of these plugs to the various dealers. Yet within two days after this last disappearance from the docks, one Sanford purchased 500 of such plugs at a price far below the market price—Sanford paid $45 for the 500 plugs; the price to a wholesaler was $165, to a dealer, $265, and to the consumer, $325. Sanford stated that he purchased the plugs from the defendant; this the defendant denied. The defendant had access to the docks at the time when both lots of these plugs disappeared. These facts would certainly warrant a finding by the jury that these plugs purchased by Sanford were "hot." The difficulty of obtaining case lots of such plugs gives them a character of uniqueness and supports the theory that these "hot" plugs were part of those missing from the docks and that they were missing from the docks because they had been stolen. We believe that the evidence is sufficient to warrant a find-

ing by the jury that the plugs which disappeared on May 23rd as well as those which disappeared some six weeks earlier were stolen.

To connect the defendant with the crime charged the State relied primarily on the presumption of guilt which by virtue of 103-36-1, U. C. A. 1943, may be drawn from proof of possession of recently stolen property without satisfactory explanation of such possession. This section provides:

"Possession of property recently stolen, when the person in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt."

The defendant contends that before the jury may be permitted to infer that he stole the plugs found in his possession (Exhibit B) it must first be shown beyond a reasonable doubt that they were recently stolen plugs and that they were the identical plugs charged to have been stolen from Strevell-Paterson. He further urges that this proof must be by direct evidence. He points out that the State's evidence is entirely circumstantial. It is urged that from evidence that there were two lots of plugs missing, that the defendant had access to the docks from which they were missed, that a short time thereafter he was in possession of a similar lot of plugs, etc., the jury was permitted to infer that the missing plugs were stolen. From this inference, plus the evidence showing that it was difficult to get these plugs in lots of 500 and the evidence that the defendant sold the plugs to Sanford at a very low price, etc., the jury was permitted to infer that the plugs found in the defendant's possession were plugs stolen from Strevell-Paterson. From the inference that the plugs in the defendant's possession were plugs stolen from Strevell-Paterson, the jury was permitted to infer in the absence of a reasonable explanation that the defendant stole them. The defendant contends that to permit the jury to draw this series of inferences, violates the rule prohibiting the basing of an inference on an inference.

Under the authorities, it is clear that the State must definitely identify the goods found in the defendant's possession as the goods which were charged to have been stolen before the jury may draw an inference of guilt based upon the proof of possession by the defendant of such  ■ goods. *Nelson* v. *State*, 29 Ala. App. 121, 192 So. 594; *State* v. *Williams*, 102 Or. 305, 202 P. 428; *State* v. *Matticker*, Mo. Sup., 22 S. W. 2d 647; *Moore* v. *Commonwealth*, 229 Ky. 765, 17 S. W. 2d 1021; *Carter* v. *State*, 57 Ga. App. 180, 194 S. E. 842.

However, the defendant's contention that the State, if it chooses to rely on the inference of guilt under 103-36-1 must prove the identity of the goods by direct evidence is untenable. See Underhill Criminal Evidence, 4th  ■ Ed., Sec. 510. In *Carter* v. *State*, supra, the court questioned the soundness of the rule that an inference cannot be based upon another inference and stated:

"Conceding it to be so [that the rule is of doubtful validity], yet it is nevertheless true that where, in a criminal case, a certain fact, such as the recent possession of stolen goods in a prosecution for larceny, is relied on, and is not directly proved, but is to be inferred from [the] circumstances, those circumstances should be such as to exclude every reasonable inference except that the defendant was actually in the possession of the goods alleged in the indictment to have been stolen."

Further, the rule that an inference cannot be based upon an inference has frequently been repudiated. See *E. K. Wood Lumber Co.* v. *Andersen*, 9 Cir., 81 F. 2d 161; *New York Life Ins. Co.* v. *McNeely*, 52 Ariz. 181, 79 P. 2d 948; *Hinshaw* v. *State*, 147 Ind. 334, 47 N. E. 157, 158; *Welsch* v. *Charles Frusch L. & P. Co.*, 197 Iowa 1012, 193 N. W. 427; *Masonite Co.* v. *Hill*, 170 Miss. 158, 154 So. 295, 95 A. L. R. 157; *Hepp* v. *Quickel A. & S. Co.*, 37 N. M. 525, 25 P. 2d 197; *L'Esperance* v. *Sherburne*, 85 N. H. 103, 115, 155 A. 203; *State* v. *Fiore*, 85 N. J. L. 311, 88 A. 1039; *Gypsy Oil Co.* v. *Ginn*, 152 Okl. 30, 3 P. 2d 714; *Neely* v. *Provident Life & Accident Co.*, 322 Pa. 417, 185 A. 784. See also

Wigmore on Evidence, Vol. 1, Sec. 41, where in criticizing the rule it is stated:

"It was once suggested that 'an inference upon an inference' will not be permitted, i.e., that a fact desired to be used circumstantially must itself be established by testimonial evidence; and this suggestion has been repeated by several Courts, and sometimes actually enforced. There is no such orthodox rule; nor can be.
"* * * The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon."

The case of *State* v. *Bruno Hauptmann*, 115 N. J. L. 412, 180 A. 809, is an apt example of a conviction based upon the drawing of successive inferences leading to the ultimate conclusion of guilt.

Excellent discussions of the rule can be found in *Neely* v. *Provident Life & Accident Ins. Co*, supra; and in *New York Life Inc. Co.* v. *McNeely*, supra. In the former opinion it is stated [322 Pa. 417, 185 A. 789]:

"When jurors in their deliberations arrive by a process of reasoning at an acceptable inference of fact, they have a right to add such fact to any previous facts found by them and proceed by ratiocination from such fact or facts to additional inferences of fact and then proceed still further by like process until they arrive at the ultimate conclusion on the issue trying."

In the New York Life Ins. Co. v. McNeely Case the court stated [52 Ariz. 181, 79 P. 2d 954]:

"But when an inference of the probability of the ultimate fact must be drawn from facts whose existence is itself based only on an inference or a chain of inferences, it will be found that the courts have, with very few exceptions, held in substance, although usually not in terms, that all prior links in the chain of inferences must be shown with the same certainty as is required in criminal·cases, in order to support a final inference of the probability of the ultimate fact in issue. We think that this is the true meaning of the 'inference upon inference' rule in civil cases [and it] is borne out by a careful analysis of the majority of [the] cases in which it has been applied, and that the courts do not mean that under no circumstances may

an inference be drawn from an inference, but rather than the prior inferences must be established to the exclusion of any other reasonable theory rather than merely by a probability, in order that the last inference of the probability of the ultimate fact may be based thereon. This rule is not based on an application of the exact rules of logic, but upon the pragmatic principle that a certain quantum of proof is arbitrarily required when the courts are asked to take away life, liberty or property."

In the case of *State* v. *Potello*, 40 Utah 56, 119 P. 1023, 1028, the rule prohibiting the basing of an inference upon an inference was discussed. One justice stated that

"one presumption or inference cannot rest upon another mere inference or presumption. It can only rest on proven facts."

The other members of the court each wrote special concurrences, but neither discussed this point—thus illustrating that it was not necessary to a determination of the case. The statements made were not concurred in by a majority of the court and cannot, therefore, be considered controlling.

The defendant next contends that before the jury should be permitted to draw an inference of guilt from the proof that the defendant was in possession of these plugs, the State must prove beyond a reasonable doubt that the plugs which Sanford allegedly purchased from the defendant were the identical plugs stolen on May 23rd. In our former opinion we so held. On rehearing the State contended that this holding misconceived the theory of the State's case. It is urged that all the State was required to prove was that the plugs (Exhibit B) which were sold to Sanford by the defendant were stolen plugs and that they had been stolen from Strevell-Paterson by the defendant—that the date upon which they were taken was immaterial.

We agree, and the former opinion did not hold otherwise, that the exact date upon which the larceny was committed is immaterial. See *State* v. *Rosenberg*, 84 Utah 402, 35 P. 2d 1004; *State* v. *Crawford*, 60 Utah 6, 206 P. 717; *State* v.

*Distefano,* 70 Utah 586, 262 P. 113 ; *State* v. *Greene,* 38 Utah 389, 115 P. 181; *State* v. *Sheffield,* 45 Utah 426, 146 P. 306. But the event or transaction charged is immaterial. It is essential that the State prove that the defendant committed the crime charged in the information. A conviction cannot be had for any act other than the one intended from the beginning to be charged. *State* v. *Bowen,* 142 Wash. 483, 253 P. 793 ; *State* v. *Gaimos,* 53 Mont. 118, 162 P. 596. The former opinion proceeded upon the theory that the State had charged and intended to charge that the defendant stole the plugs which were missing about May 23rd. But the information charged that the defendant stole from Strevell-Paterson "one case of H-10 Champion spark plugs" and named the date of the stealing as between May 23rd and May 25th. The evidence adduced by the State showed that Strevell-Paterson had missed a carton of these plugs between these dates; that the defendant had access to them; that such plugs were a scarcity and difficult to get in lots of 500; that defendant had possession of such a carton of plugs and sold them to Sanford for a ridiculously small price. It introduced the lot of plugs sold to Sanford in evidence as Exhibit B. There is nothing in the record which shows that the State knew at the time the complaint was filed or at the time of the trial that another similar lot of plugs were missed by Strevell-Paterson six weeks earlier and that the defendant had had equal access to them. While witness Hay testified that the earlier shipment had been lost by the railroad, it clearly appears that they reached the docks of the Stordor Forwarding Company, the same place from which the carton of plugs was missed on May 23rd. This appears from the testimony of witness Haslam who was called by the defendant after the State had rested. Referring to the earlier missing, counsel for the defendant asked Haslam :

"Now, then, where were they lost or stolen, according to your records? A. Well, according to our records they were stolen from 615 West Second South."

Haslam was also asked if he knew whether previously a lot of plugs similar to those missed on May 23rd had disappeared. Haslam answered:

"I have never testified to that." "Q. Well, do you know of your own knowledge whether there had been? A. From our records of the unloading and not being there at the time of the delivery, yes."

Haslam was warehouse foreman of Stordor Forwarding Company. His testimony set out above could only be construed to mean that Stordor Forwarding Company records showed that this earlier shipment of plugs was unloaded by the company at its docks at 615 West Second South, and that when they went to deliver them to Strevell-Paterson at the time of the delivery they were not there. Hay, the witness who testified that the plugs were lost by the railroad, was an employee of Strevell-Paterson Hardware Company. He testified that he did not know from where the earlier plugs were lost. He also testified that the railroad company had not paid the claims as yet, and later stated that it was the railroad and Stordor Forwarding Company's responsibility to see that the plugs are delivered. Hay was working in the receiving department of Strevell-Paterson Hardware Company. He was not in as good a position as was Haslam, an employee of Stordor Forwarding Company, to ascertain how far the earlier shipment had come before it was lost. Haslam testified that it had reached the docks at 615 West Second South, the docks of the Stordor Forwarding Company. It was from these docks that the carton of plugs was missed on May 23rd.

From the evidence we also conclude that the plugs missed at this earlier date were identical in type to those missed at the later date, May 23rd. The first witness, Hay, testified that the second shipment was a replacement order to replace those lost on the earlier date. Haslam, when called by the defendant, testified that the replacement shipment was in the same size cartons as the earlier ones but that

they had no jurisdiction to open the cartons to examine the plugs. The court then asked:

"Let me ask you, did you say these were sent in place of the ones that were lost? These were duplication of the order?"

To this witness Haslam answered:

"According to the information I get from the Strevell-Paterson Hardware Company."

Thus there is evidence that the May 23rd shipment was a replacement order and that according to the information obtained by Haslam from Strevell-Paterson, they were a duplication of that order.

Counsel for the Attorney General's office, and counsel for the defendant in the briefs on appeal both assumed that there was evidence of two missings, the district attorney who assisted the Attornel General on petition for rehearing argued the rehearing on that basis. Clearly this is in accordance with the fair intendment of the evidence. In the face of this evidence, no reasonable jury could believe beyond a reasonable doubt that the plugs recovered from Sanford, and introduced as evidence as Exhibit B, were the plugs which were missed on May 23rd. The inference that they may have been the plugs missed some weeks earlier is too strong. However, we shall see from what is subsequently said that this becomes immaterial.

While from a reading of the complaint and information it would appear that the State had singled out the case of plugs stolen on the week-end of May 23rd as the criminal event, what it really did was to charge the stealing of one case of (500) (H-10 Champion Spark Plugs from Strevell-Paterson further describing them as stolen between May 23rd and 25th, 1942. It introduced in evidence the lot of plugs which were recovered from Sanford, which lot the evidence tends to show were the plugs stolen from Strevell-Paterson by the defendant and which the State thought were taken around the week-end of May 23rd. But regardless of

when they were taken, it relied from the beginning on the taking of that particular lot of plugs later designated as Exhibit B. It was the criminal act or transaction of stealing this particular lot of plugs (Exhibit B) which the State charged and on which it relied. The date of May 23rd was thought to be the date on which this lot was taken and it was used as a means of describing and particularizing the lot stolen. If the evidence had shown only one lot missing, the jury could well have concluded that Exhibit B was taken on May 23rd. But when it appeared that another similar lot had been previously stolen, the date, as a distinguishing characteristic in the description of the lot stolen, sluffed off because the stolen lot, whenever it was taken, was in court and it was this lot that the State charged that the defendant stole. The date of the stealing was immaterial except to ascertain whether the statute of limitation had run or to establish the element of recentness required under 103-36-1, U. C. A. 1943.

Certainly the corpus delicti, which only requires proof that a certain set of plugs was stolen from Strevell-Paterson, it not the less proved because it cannot be said on which of the two dates that certain set of plugs was taken. The corpus delicti consists of proving that the certain set of plugs (Exhibit B) were stolen from Strevell-Paterson. If that is proven the date is immaterial. The fact that some other lot was stolen whether between May 23rd and May 25th or six weeks earlier makes no difference. The very fact that there were two missing, one of which was on the day named, only demonstrates the fact that the named date, as part of the description of the criminal transaction, must be considered incidental, leaving the description of the criminal event charged as the stealing of one case (500) H-10 Champion Spark Plugs from Strevell-Paterson. This leaves the definite fixing of the event and transaction charged as the stealing of that certain set of plugs introduced and known as Exhibit B.

We then conclude that there is evidence from which the jury could have concluded that Exhibit B was stolen because though it consisted of goods which were readily saleable it had been disposed of for far under its market price. This coupled with the other facts—that these plugs were difficult to obtain in lots of 500; that Strevell-Paterson was one of the dealers possessing such large lots; that this lot and another one like it were both missing from Strevell-Paterson; that the defendant had accessibility to both missing lots; that he had this lot (Exhibit B) in his possession— proves the corput delicti. From this evidence the jury could conclude that Exhibit B had been stolen from Strevell-Paterson, and in the absence of a reasonable explanation by the defendant of his possession of these stolen plugs, the jury could infer that he stole them. The date when he stole them is immaterial for both missings were recent so as to bring 103-36-1 into play.

From what has been said above it is apparent that we were in error in our former opinion in holding that the State had charged the criminal event as the stealing of plugs on May 23rd, and that when it failed to prove that Exhibit B was stolen on May 23rd, it appearing that there was a missing on that date, it failed to prove the criminal transaction charged. Our statement "that proof cannot be in the alternative" is not applicable to a case such as this where the particular lot which the State relies on as the subject of the larceny is in the court from the beginning and the defendant is confronted with it. The State then has definitely elected to stand on the event of the stealing of the lot it produces in court and in regard to which there is proof that it was stolen from the party named as owning it. There is no election between dates or missings required. *Tabor* v. *State,* 34 Tex. Cr. R. 631, 31 S. W. 662, 53 Am. St. Rep. 726. The larceny elected is the larceny of the certain goods produced in court and, independent of the date, properly described in the complaint and information. The defendant by injecting into the case the probability that another simi-

lar lot was recently stolen cannot produce a stalemate in the prosecution of the case by being permitted successfully to assert that the prosecution has charged him with the taking of the certain stolen lot produced in court on a certain date and that it appearing that there was a missing on that date of such described goods, it must then identify the stolen goods produced as the lot which was stolen on May 23rd.

The defendant further contends that the court erred in instructing the jury on the inference of guilt which it could draw from the proven facts of the larceny, possession by the defendant of the recently stolen property, and the failure of the defendant to make a satisfactory explanation. In the instruction, which is challenged by this contention, the jury was instructed as follows:

> "You are instructed that the law provides that possession of property recently stolen, when the party in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt. That is, it is declared by statute that from the proven facts of the larceny, recent possession in the defendant, and his failure to satisfactorily explain his possession, an inference or presumption arises, unless rebutted by other evidence or discredited by the circumstances, sufficient to make a prima facie case against the defendant * * *."

The court should not have instructed the jury in the language quoted above. The jury is not concerned with a determination of when the State has made out a prima facie case; its duty is to determine the issue of ultimate guilt. *State* v. *Brooks,* 101 Utah 584, 126 P. 2d 1044; *State* v. *Baretta,* 47 Utah 479, 155 P. 343.

An instruction such as this one which concerns the evidence necessary to make out a prima facie case for the State would only be confusing and might lead the jury to conclude that the State had met its burden of proving ultimate guilt beyond a reasonable doubt by making out a prima facie case. However, in connection with this instruction the court in this case instructed the jury that the State still must prove guilt beyond a reasonable doubt. Thus the instruction as given, though improper, could not have been

prejudicial error. *State* v. *Donovan,* 77 Utah 343, 294 P. 1108. But since the term "prima facie" is used in the statute in the sense of presumptive evidence (*State* v. *Potello,* 40 Utah 56, 119 P. 1023) it would have been more proper to instruct the jury in substance that if it found from the evidence beyond a reasonable doubt that someone had committed the larceny as charged, that the defendant was found in possession of the recently stolen goods and that it further found that he failed to give a satisfactory explanation, there would arise an inference that the defendant committed the larceny and that this inference might, with all other circumstances, be considered in determining whether or not the jury was convinced beyond a reasonable doubt of the defendant's guilt.

For the reasons stated in the above opinion, the opinion contained in Utah, 139 P 2d 228, is recalled and the judgment of the lower court is affirmed.

McDONOUGH and WADE, JJ., concur.

MOFFAT, J., concurs in the result.

LARSON, Justice (concurring in result—dissenting in part).

I cannot concur in some holdings in the prevailing opinion, nor in much of the rationale thereof. In an endeavor to make the points of difference clear, I list the conclusions in that opinion in which I concur.

I agree that the record justified the following:

(1) The corpus delicti was proved; that is, that sometime between May 23rd and May 25th, 1942, a case of Champion spark plugs was stolen from Strevell-Paterson.

(2) That within two days thereafter, defendant was in possession of a case of such plugs, which were subsequently introduced in evidence as Exhibit "B".

(3)    That defendant sold such plugs, Exhibit "B," to Sanford under conditions which justify an inference that defendant knew they were "hot."

(4)    "That the exact date upon which the larceny was committed is immaterial   *   *   *. *But the event or transaction is material   *   *   *.* A conviction cannot be had for any act other than *the one intended from the beginning to be charged.*" (Italics mine.)

(5)    That the instruction No. 4 as given by the court to the jury was erroneous, for the reasons and under the authorities stated in the prevailing opinion.

(6)    That under the charge as a whole, this error is not such as to impel us to reverse the judgment.

(7)    That the verdict and judgment from which this appeal was taken be affirmed.

Instead of listing the points and statements in the prevailing opinion with which I differ, I shall discuss the law and the record as I understand it, from which discussion the points of difference will be apparent.

The hub of the opinion, about which its rationale revolves the keystone which supports the whole structure, is the statement that the state charged and relied on the theft of Exhibit B, and not upon the theft of a carton of spark plugs between May 23 and May 25, 1942. The difficulty with that position is that it places the stones of the arch, including the keystone, with the wide end down so they slip out under the pressure of the structure which must rest thereon.

In the first place, larceny exists in the *act* of the person, not in the property stolen. Defendant is tried and punished for his conduct, for the *act of asporting with the intent* to deprive the owner of property. The property stolen is an incident or element in the pleading and the chain of evidence necessary to establish the act of asporting. The ownership of the property asported is a link in the pleadings and chain of evidence necessary to establish the intent to steal, that is, the intent to permanently deprive the owner

thereof.  Defendant is charged and tried for an *act of mis-behavior,* with a *feloneous intent.*  As far as pleading is concerned the time of the offense, the property taken, and the ownership of such property are elements used or set up to fix, and determine what act or behavior is involved, that defendant may prepare his defense, both parties be circumscribed in their proofs, and the act, the existence of which is to be determined by the jury, may be definite and certain. As far as the evidence is concerned, such facts must be proved as laid so no unfair advantage may be taken and the acquittal or conviction may constitute a bar to another prosecution for the same act, conduct, or offense.

Let us see now what the state charged.  The complaint charged that

"between the 23rd day of May, 1942 and the 25th day of May, 1942
    *   *   *   Hall stole from Strevell-Paterson one case of H-10 Champion Spark Plugs   *   *   *."

The information charged the offense in the same language.  While the state need not prove the offense was committed on the exact date alleged, yet the allegation of date is an element which tends and helps to identify the act upon which complaint is made, and to distinguish it from some other or separate act of offense.  But while the state is not bound by the exact date alleged, it certainly is bound to the particular act, event or occasion to which its proof is directed, and can not take a conviction on any other act.  (See admission No. 4 in the beginning of this opinion, quoted from the prevailing opinion.)  Let us now examine the record.  The first witness, Hay, manager of Strevell-Paterson, testified that *on May 19* they placed an order for three cartons of spark plugs, adding, "they were replacement of plugs previously *lost by the railroad company."*  He then identified and put in evidence the original invoice for the shipment of the three cartons of plugs ordered May 10, and testified that of such shipment, one carton of H-10's was not delivered; that the carton

of plugs not delivered with the other two on May 25th were, according to the invoice, the same type of plugs as were in a carton in court, which later was identified as Exhibit B. That such plugs are difficult to get, and handled in this territory by only two distributors; that during the past year no sales in carton lot had been made by it. Ballegooie testified that in unloading freight from the railroad cars at the platform of the Stordor Forwarding Company at Salt Lake City, *in May*, 1942, he unloaded three cases of Champion spark plugs for Strevell-Paterson. Haslam, warehouse foreman at Stordor Forwarding, testified that according to their manifest three cartons of Champion spark plugs were on May 23rd unloaded from freight cars at their dock for Strevell-Paterson; that on Monday morning, May 25th, only two cartons were there, and the third could not be found. Sanford testified that on May 26th he bought from defendant one carton of H-10 Champion spark plugs, Exhibit B, for $45; that defendant first asked $100, but accepted $45 when advised that was all the money Sanford had. Beckstead, a policeman, testified that on May 27th he was detailed "to investigate some missing spark plugs;" that on June 1st he picked up Exhibit B at the garage where Sanford worked; that on June 2nd he arrested defendant, and had several conversations with him about the spark plugs but defendant denied any connection with them. It was stipulated, at the request of the state, that three cartons of spark plugs listed on the invoice for plugs ordered May 10th and received in Salt Lake May 23rd were unloaded from freight cars at the Stordor docks. All this goes directly and unequivocally to prove an act, a theft, which could only have been committed between May 23rd and May 25th, because it was a theft of a carton which definitely was not in Salt Lake City until May 23rd.

Haslam, recalled, testified that he knew nothing about it, but their records showed that a month or six weeks before May 23rd three cartons of spark plugs consigned to Strevell-Paterson had disappeared from their docks, but he did not

know and had no record as to what size or kind of plugs they were. He said he did not testify that they were stolen. All evidence other than this, and it is cited in full in the prevailing opinion, relative to any other plugs, is shown in the prevailing opinion to have been incompetent, hearsay, and of no probative value. There was evidence to show the value of a carton of H-10 plugs as about $265 to the retailer and $300 to the consumer and that defendant had ready access to the Stordor dock as a delivery man. That is the whole record; there is no other evidence pertaining to the issue; and on that record it went to the jury.

Every bit of evidence in the record regarding any asportation, any taking or carrying away, every bit of evidence of any theft of any property is definitely and specifically tied to the theft of a carton of H-10 plugs delivered by the railroad company to the Stordor dock on the 23rd of May and missing therefrom on May 25th. There is no evidence of any other theft; there is no evidence that any carton of H-10 plugs other than the shipment received on May 23rd was ever delivered to Stordor dock for Strevell-Paterson. All the evidence as to a theft therefore goes to a very definite time, not open to variation, between May 23rd and May 25th. No other transaction could be involved. All the evidence as to the property goes to a carton of spark plugs received May 23rd at Stordor docks. There is no room for argument or inference otherwise. Every bit of evidence is directed at that particular carton. There is no competent evidence in the record that any other carton of such plugs was ever stolen from Strevell-Paterson or anyone else. So that the pleading and all the evidence is directed at a particular and definite time, place, piece of property and event; to wit, the theft of a particular carton of H-10 spark plugs, unloaded from a railroad car onto the Stordor dock on May 23rd and which particular carton was missing from the dock on May 25th. The state having charged and definitely directed all its evidence to this particular and specific carton of plugs

is bound thereby and cannot have or maintain a conviction on any other plugs or event.

Does the record then sustain a conviction of the theft of the particular carton of plugs so shipped, received and missed? In other words, could the jury find that Exhibit B was the carton of plugs stolen between May 23rd and May 25th? As shown in the prevailing opinion and conceded in the beginning of this opinion there is ample evidence from which the jury could find the theft of the particular carton of H-10 plugs received on the dock on May 23rd; they could find that defendant was in possession of a carton of plugs on May 26th, which carton was identified as Exhibit B; they could find defendant knew Exhibit B was stolen goods and sold them to Sanford; that Exhibit B was the same kind of carton and the same kind of plugs as the carton of plugs stolen a couple of days before; they could find that Hall was in a *hurry* to get rid of the "hot" goods; and if the jury so found, it must follow that they found Hall deliberately falsified when he denied to the officers that he knew anything about, or had any connection with, either the missing plugs or with Exhibit B. May they from these facts infer that Exhibit B was the carton missing from the shipment received at the dock on May 23rd? *Not only may they so infer, but from the record such inference seems almost unescapable.* Such plugs, very hard to get in this vicinity, not obtainable in carton lots except by wholesalers, and for a year past not sold by wholesalers in carton lots, appear two days after the theft very "hot" in the hands of a man who had easy access to the place from which the stolen plugs were taken; and who knew they were taken and who fails utterly to make any explanation of his possession of such an unusual and rare article as a carton of plugs when there is no evidence of any other such carton of plugs being in the vicinity, or elsewhere obtainable, the record almost compels a conclusion that Exhibit B was the missing carton. On this ground, and on this ground alone, I concur in the holding that the verdict and judgment appealed from should be affirmed.