STATE v. CROWDER.

No. 7146.   Decided September 28, 1948.   (197 P. 2d 917.)

See 52 C. J. S., Larceny, sec. 917. 32 Am. Jur. 1035. Evidence of money, source of which is not traced, as admissible against a defendant criminally charged, note, 123 A. L. R. 119.

*William J. Cayias,* of Salt Lake City, for appellant.

*Brigham E. Roberts,* Dist. Atty., of Salt Lake City, *Grover A. Giles,* Atty. Gen., and *A. John Brennan,* Asst. Atty. Gen., for respondent.

WADE, Justice.

Wayne Crowder was convicted of the crime of grand larceny and appeals from such judgment and the sentence thereon.

The record discloses that appellant had been employed off and on by Mr. Rottini, who operates a dairy and farm near Murray, Utah, for about two or three years prior to the time the offense was committed. During the time he was employed by Mr. Rottini, he and his wife and stepson occupied two rooms in the home of his employer which had been converted into a small apartment for the use of his employees by Mr. Rottini. This apartment was not locked off from the rooms occupied by Mr. Rottini and anyone who occupied the apartment had easy access to his home and could easily become acquainted with the layout and the routine followed by the Rottini family. Mr. Rottini had on occassion hired men to help on the farm for a period of two or three weeks and these men were allowed to room and board in the two room apartment occupied by appellant and his family, and also had easy access to the Rottini family's rooms.

On May 15, 1947, appellant decided to leave the employ of Mr. Rottini and on the next day he and his wife packed their belongings and proceeded in their car to Ogden, Utah, where they remained about a day and then went to Superior, Wyoming, where appellant tried to get a job with a coal mining company. He was not accepted because he could not pass the physical examination. Appellant's wife testified that on May 19th and the morning of May 20th, he was gambling in a bar at Superior, Wyoming; that she had accompanied him but that he did not come home with her; that this occurred on a Tuesday morning and that she did not hear from him and did not know where he was until Thursday, May 22nd, when he phoned her from Evanston, Wyoming, to bring the car, which she had, and pick him up. This she did and returned with him to Superior, Wyoming, where they were staying with her brother.

On the night of May 21st, a cab driver saw appellant in Murray, Utah, at his cab stand and at appellant's request he drove him out to 5217 South Redwood Road. The cab driver testified he recognized appellant because he had used his cab on previous occasions to be driven to the dairy, and he remembered this particular trip by appellant because he expected to take him to the dairy again and was surprised when appellant asked him to stop in front of 5217 South Redwood, instead of at the dairy which belonged to Mr. Rottini, the address being 5249 South Redwood Road, which was about 100 yards from 5217 South Redwood Road. The cab driver also testified that he again saw appellant in Murray in front of the cab stand at about 5 o'clock on the morning of May 22nd. The man who lived at 5217 South Redwood Road testified that appellant did not call at his home on that day.

Mr. Rottini testified that on May 24th he discovered that $2000 had disappeared from a hat box in which he had concealed it; that this sum consisted mostly of twenty dollar bills with the exception of about ten or fifteen ten dollar bills, and that he had been using this hiding place for about six months; that there was nothing to indicate that his house had been broken into and he had no reason to suspect the loss until his wife went to place another twenty dollar bill in the hat box and discovered that the money was missing; that he had last seen the money in the hat box on May 21st; that since appellant and his family left, no one was living in the house with him except his wife and son; that in connection with his dairy he has a milk route and this milk is delivered by himself, his son and his wife, usually between the hours of 4 a. m. and 8 or 8:30 a. m., at which time no one is in the house; that he has an employee named Brown who comes on the premises at 6 o'clock in the morning since appellant quit; that he was home the nights of May 21st, 22nd and 23rd, and that if a stranger had come on the premises during those nights, he would have been awakened by the barking of a police dog which he

owns; that this dog did not bark at appellant or anyone it knew, but always barked at strangers. This testimony about the dog was contradicted by appellant's wife and stepson, who testified that the dog barked at everyone who came on the premises at night, including Mr. Rottini. Appellant's wife also contradicted testimony by Mr. Rottini that he had employed no outside help besides his regular employees for more than six months before appellant quit.

Appellant was arrested in Suprerior, Wyoming. At that time he was in possession of $1000 in twenty dollar bills which he had left with a bartender in Superior, Wyoming, on May 23rd for safekeeping. When appellant left Mr. Rottini's employ he was not known to have more than $300. On the trip back to Salt Lake in the custody of two Salt Lake County deputy sheriffs, he tried to explain his possession of the $1000 in twenty dollar bills by saying he had won it gambling in Evanston, Wyoming, but when they arrived in Evanston and one of the officers asked him to show him the place where he had won the money, he said he had won it in Superior, Wyoming.

Appellant contends that the court erred in admitting in evidence the $1000 in twenty dollar bills because no proper foundation was laid for its admission in evidence, the State having failed to identify the twenty dollar bills found in appellant's possession as the identical bills which were stolen. In support of this contention he quotes the following from Wigmore, 'Treatise on Evidence,' Vol. 1, Sec. 154, p. 156:

"The mere possession of *money* is in itself no indication that the possessor was the taker of money charged as taken, because in general all money is alike and the hypothesis that the money found is the same as the money taken is too forced and extraordinary to be receivable." (Italics added.)

However, appellant quotes further from Wigmore, the following:

"Where the denominations of the money found and the money taken correspond in a fairly close way, the fact of the finding of that specific money would have probative value and be relevant, because the money found is fairly marked as identical with the money taken. Another mode, however, of making the fact of money possession relevant is to show its *sudden possession,* i. e., to show that before the time of taking the person was without money, while immediately after that time he had a great deal; this reduces the hypotheses to such as involve sudden acquisition, and a dishonest acquisition then becomes a natural and prominent hypothesis. On such condition the possession of unidentified money becomes relevant." (Italics added.)

From the above quotation appellant argues that Wigmore says money may not be admitted in evidence unless (1) the denomination of the money found and the money taken correspond in a fairly close way or (2) there is a sudden possession of money following a period where it has been shown the accused was without money. He submits that neither one of these conditions were present in his case.

We agree with what Wigmore says, but we cannot agree with appellant that neither of the conditions are present in his case. The evidence was clear and uncontradicted that the money stolen were mostly twenty dollar bills with the exception of a few ten dollar bills and that when appellant left the employ of Rottini he had no more than about $300; that he had found no other employment, and when last seen by his wife in Superior, Wyoming, before he disappeared for a few days, he was gambling, but there was no testimony introduced by the defense that he augmented the sum he had by this activity that night.

After his disappearance from Wyoming, and at the time the money was probably taken, he was seen and recognized in Salt Lake in the vicinity of Rottini's home. Thereafter he was again seen within a short time in Superior, Wyoming, and this time he had in his possession numerous twenty dollar bills, a thousand dollars of which he gives to a bartender for safekeeping and about $200 of which he retains. It is our opinion that this evidence was

sufficient to lay a proper foundation for the introduction in evidence of the $1000 in twenty dollar bills and that it also fulfilled the requirements laid down by Wigmore. The fact that only $1000 was found in appellant's possession is immaterial. The denomination of the bills were all twenty dollars and he had had sufficient time to dispose of the rest before his arrest. Wigmore's second condition is also present. Appellant had but a comparatively small sum in his possession before he was seen in the vicinity of Rottini's house, and the next day he is seen with about $1200 in bills of the denomination of twenty dollars. Certainly this is a circumstance which involves, as Wigmore says: "sudden acquisition, and a dishonest acquisition then becomes a natural and prominent hypothesis. On such condition the possession of unidentified money becomes relevant." The court therefore did not err in admitting in evidence the $1000.

Appellant next contends that there was insufficient evidence to sustain a conviction. His argument to sustain this contention is that others also knew of Rottini's habits and the layout of his home, and that on two prior occasions small sums had been missed, and that on one such occasion his young son had taken it and on the other occasion another boy was suspected. As to that evidence it was a matter to be considered by the jury and not this court what weight they wished to give it in arriving at a conclusion of guilt or no guilt. Appellant also argues that there was no evidence connecting him with the crime since the only evidence introduced was that he was present in the vicinity of Rottini's home on one of the nights on which the money could have been stolen and that he was found in possession of $1000 in bills of the denomination of twenty dollars and such evidence only shows a possibility that the appellant took the money but is insufficient to show an actual theft by him. We cannot agree with such a contention. The jury could very reasonably find as it did from the evidence that appellant's presence in the im-

mediate vicinity of Rottini's home and his subsequent quick return to Wyoming with a sum greatly in excess of any he was known to have had, and consisting of twenty dollar bills which was the denomination of the stolen bills, and appellant's equivocal statements as to when he acquired these bills, that appellant had stolen those bills as charged.

Appellant further assigns as error the giving of part of instruction No. 5 on the unexplained possession of recently stolen property. That instruction is in part as follows: ■

"* * * If you find from the evidence, beyond a reasonable doubt (1) that some one had committed larceny; (2) that defendant was found in possession of recently stolen property; (3) that the defendant failed to give a satisfactory explanation, then there is an inference that the defendant committed larceny, and that inference beyond that of other evidence be considered in determining whether you are convinced beyond a reasonable doubt of defendant's guilt."

This instruction was not only very ambiguous but was clearly inaccurate. This instruction says that under the specified conditions,

"there is an inference that the defendant committed larceny, and that inference beyond that of other evidence be considered in determining whether you are convinced beyond a reasonable doubt of defendant's guilt."

The meaning of this part of the instruction is not at all clear, but it certainly invited the jury to give special attention to this part of the evidence. While Sec. 103-36-1, U. C. A. 1943, makes unsatisfactory explanation of possession of recently stolen property prima facie evidence of guilt, it does not authorize such evidence to be given special consideration beyond other evidence. Clearly to so instruct the jury was erroneous.

There is a further objection to this instruction. What constitutes a prima facie case is one for the court to determine and the jury does not pass on nor is it concerned

at all with that question. When the court submits a case to a jury it thereby decides that a prima facie case has been proved, otherwise it should have directed a verdict. This statute is addressed only to the court, it determines for the court what evidence is sufficient to constitute a prima facie case, and it is the duty of the court when a prima facie case has been made to submit it to the jury, but it does not require the court to instruct the jury that such facts constitute a prima facie case. The jury is not concerned with that problem, they are only concerned with whether all of the evidence sufficiently convinces them of defendant's guilt. This court has repeatedly held that it is error to instruct the jury on that question. See *State* v. *Barretta*, 47 Utah 479, 155 P. 343; *State* v. *Hall*, 105 Utah 162, 145 P. 2d 494, 500. In the *Hall* case on this question speaking through Mr. Justice Wolfe, we said:

"An instruction * * * which concerns the evidence necessary to make out a prima facie case for the State would only be confusing and might lead the jury to conclude that the State had met its burden of proving ultimate guilt beyond a reasonable doubt by making out a prima facie case. * * *"

That there is such danger is clear even where the court carefully points out that such facts constitutes only evidence of guilt and does not create a presumption thereof, and that the jury must not find defendant guilty unless the evidence convinces their minds of his guilt beyond a reasonable doubt. However, we have repeatedly held that such instruction is not prejudicial where the court explains fully the effect of such evidence. See *State* v. *Donovan*, 77 Utah 343, 294 P. 1108; *State* v. *Sawyer*, 54 Utah 275, 182 P. 206; *State* v. *Mellor*, 73 Utah 104, 272 P. 635. In view of the fact that the court here repeatedly instructed the jury that before they could convict the defendant they must be convinced by the evidence beyond a reasonable doubt of his guilt, and the further fact that the evidence points very positively to his guilt, we hold that the giving of this instruction was not prejudicial. Were the evidence of guilt susceptible of con-

siderable doubt, it is not at all certain that the giving of such an instruction would not be prejudicial. The judgment of the trial court is affirmed.

McDONOUGH, C. J., concurs.


WOLFE, Justice (concurring).

I agree with the prevailing view that the court did not err in admitting in evidence the money found in possession of the defendant; and I also concur in the holding that the evidence was sufficient to support the verdict.

As to the third point, I also feel constrained to concur with the majority, especially in view of the recent case of *State* v. *Hall*, 105 Utah 162, 145 P. 2d 494. As pointed out in the prevailing opinion, this court has repeatedly held that it is error to instruct the jury upon the elements of a prima facie case.

As observed in the prevailing opinion, Section 103-36-1, U. C. A. 1943, insofar as it sets forth the facts necessary to make a prima facie case, is for the guidance of the court. The jury is not concerned with what constitutes a prima facie case. The elements upon which the jury should be instructed are not the elements of a prima facie case of larceny, but the elements which constitute the crime of larceny.

Unfortunately there is some language in the case of *State* v. *Hall*, 105 Utah 162, 145 P. 2d 494, 500, which seems to approve an instruction similar to the one given here. That language is out of harmony with the other decisions of this court, and should not be followed by trial courts in preparing their instructions.

With the majority, I agree that the instruction though erroneous, was not preduicial. Had the defendant offered any clear and direct evidence of alibi, or any other substantial evidence pointing to another as the culprit, I should

be inclined to hold otherwise. In such a case, an erroneous instruction such as that given here, might be the very factor which would tip the scales in favor of the State. But the most that can be said for the case made by the defendant is that it shows a bare physical possibility that some one other than defendant *might* have committed the crime. On the evidence in the record, and in view of the other instructions of the court, which were quite favorable to the defendant, I am unable to say that the instruction complained of, though erroneous, was prejudicial. I therefor concur.

LATIMER, Justice (concurring in the result).

I concur in the result.

If I were convinced the instruction singled out part of the evidence and invited the jury to give particular attention or greater weight to the portions mentioned, then I would hold the giving of the instruction was both erroneous and prejudicial. However, I believe the instruction given by the court is substantially the same as the one this court suggested should be given in similar larceny cases.

The instruction is far from being letter perfect, but consideration should be given to the fact that by stipulation of counsel the court orally instructed the jury. The use of the word "beyond" was unfortunate, but one of its accepted definitions is "in addition to." If this definition is given to the word, then I suggest the instruction be compared wth the one recommended by us in *State* v. *Hall*, 105 Utah 162, 145 P. 2d 494. In that case we said:

"* * * But since the term 'prima facie' is used in the statute in the sense of presumptive evidence (*State* v. *Potello*, 40 Utah 56, 119 P. 1023) it would have been more proper to instruct the jury in substance that if it found from the evidence beyond a reasonable doubt that someone had committed the larceny as charged, that the defendant was found in possession of the recently stolen goods and that it further found that he failed to give a satisfactory explanation, there would arise an inference that the defendant committed the larceny and that this inference might, with all other circumstances,

be considered in determining whether or not the jury was convinced beyond a reasonable doubt of the defendant's guilt."

I wonder why, in this case, the majority of the court discuss the question of an erroneous instruction based on the proposition that the court instructed the jury that proof of the three elements set forth in the above quotation should be deemed prima facie evidence of guilt. The court gave no such instruction and the fundamental difference between such an instruction and the one given by the court in this case was recognized by us in *State* v. *Hall,* supra.

Assuming the evidence established beyond a reasonable doubt that the money was stolen; that immediately after being stolen it was found in the possession of the defendant; and that he failed to make a satisfactory explanation as to how he acquired possession, there is an inference that the defendant stole the money. That is all the first part of the instruction stated. I believe we should accept the view that a court does not err when it merely states a conclusion that all reasonable persons admit, and the law states, is correct. The court did not tell the jury it had to accept the inference nor to convict the defendant because of the inference. In the latter part of the instruction the court told the jury that it might consider this inference in addition to other evidence introduced by the state in determining whether they were convinced beyond a reasonable doubt of defendant's guilt.

While I do not commend the instruction, I do not believe it is erroneous in the sense that it misinstructed the jury on the law.

For these reasons, I concur in the affirmance.

PRATT, Justice (dissenting).

I dissent. In the case of *State* v. *Peterson,* 110 Utah 413, 174 P. 2d 843, we pointed out that unsatisfactory explanation of possession of stolen property is a matter of identifi-

cation of the thief. *State* v. *Hall,* 105 Utah 162, 145 P. 2d
494 agrees with this. In this latter case this court said that
the state must definitely identify the goods found in de-
fendant's possession as the goods which were charged to
have been stolen before the jury may draw an inference of
guilt based upon proof of possession of stolen property un-
satisfactorily explained. The *Hall* case recognizes, as did I,
in my opinion in the *Peterson* case, that proof of unsatis-
factorily explained stolen property may have probative value
other than as proof of identity. But the serious question
arises when the circumstances are such that the alleged
stolen property is not earmarked in any way that would
distinguish it from other of its kind—for example, $20 bills
such as were involved in the present case. No one saw the
bills taken. The bills in defendant's possession are only con-
nected to the crime by evidence of identity—circumstantial
evidence purely, so far as proof of theft is concerned. I
believe all will concede that circumstantial evidence must
exclude reasonable hypotheses of innocence. The *Hall* case
recognizes this. What then is the effect of the instruction 5
in this case, of which complaint is made?

It says that this evidence which is ordinarily used to estab-
lish identity of the thief of personal property proven to have
been stolen, raises an inference which the jury may consider
"beyond" that of other evidence in determining defendant's
guilt. To find him guilty the jury must find that the par-
ticular property in his possession was property alleged to
have been stolen. (Incidentally, this part of instruction 5
is in the abstract and does not refer to any particular of-
fense or property.) The effect of the instruction is to set
out certain evidence, circumstantial in nature, as to theft,
and tell the jury that it has some kind of weight "beyond"
that of other evidence. The implication is that it is of greater
weight. Obviously this is prejudicial.

Now the question is: Is this prejudicial effect nullified
by the general instruction as to the burden of proof? I do not
think so. It is true that the *Hall* case so indicates, but I

question that ruling. The *Hall* case appears to have established this rule in reliance on the case of *State* v. *Donovan,* 77 Utah 343, 294 P. 1108, 1109. An examination of that case reveals that the instruction which was held to be corrective of the otherwise prejudicial instruction did much more than instruct the jury that they must still find guilt beyond a reasonable doubt—it also instructed the jury that:

"* * * the possession of property recently stolen may be considered by you as other evidence in the case and given such weight as the circumstances and conditions may in your judgment warrant, but even though no attempt is made to explain such possession, such possession alone is not sufficient evidence to warrant a conviction. But such possession may likewise be taken into consideration by you in connection with the other circumstances as may be shown by the evidence in the case."

Commenting on this the court said:

"* * * While the instruction in question stated that the unexplained possession of recently stolen property was prima facie evidence of guilt, the statement was materially qualified, if not disputed, by the further charge that such prima facie evidence did not relieve the state from proving defendant's guilt beyond a reasonable doubt, *and that such possession, even though unexplained, was not alone sufficient to warrant a conviction, but that such possession might* be taken into consideration with other circumstances, etc."

"* * * That part of the instruction to the effect that possession of property recently stolen, etc., shall be deemed prima facie evidence of guilt is disapproved because the jury was not concerned with the question. The duty of the jury was to determine whether the guilt of the accused had been proved beyond a reasonable doubt. But this error, or impropriety, rather, in view of the remainder of the instruction, cannot be said to have resulted in any prejudice to the accused. The clear purport of the instruction, notwithstanding the reference to what should be deemed prima facie evidence of guilt, was *that recent and unexplained possession of stolen property was not alone sufficient to warrant a conviction, but was only a circumstance to be taken into consideration with the other evidence,* and that proof of guilt beyond a reasonable doubt was necessary to warrant conviction * * *" (Italics added.)

In giving the corrective instruction which amounted to a proper safeguard of the defendant's rights, the court was

in accord with earlier cases in Utah with similar holdings. See: *State* v. *Bowen,* 45 Utah 130, 143 P. 134; *State* v. *Barretta,* 47 Utah 479, 155 P. 343; and *State* v. *Sawyer,* 54 Utah 275, 182 P. 206.

Let us assume, however, that so far as correcting an error of instructing upon a prima facie case is concerned the *Hall* case is good law, there still remains in this case the distinction that the lower court went further than to merely instruct upon a prima facie case. It went so far as to give weight to the inference of identity as proving the theft far beyond what we have repeatedly recognized as the proper probative value of circumstantial evidence.