UNITED STATES, Appellee

v

WILLIAM C. DAMMERICH, Private E–2,
U. S. Army, Appellant

9 USCMA 439, 26 CMR 219

No. 10,931

Decided July 3, 1958

 

*First Lieutenant Herbert R. Brown* argued the cause for Appellant, Accused. With him on the brief was *Colonel Edward M. O'Connell.*

*First Lieutenant Avram G. Hammer* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *First Lieutenant George J. Miller.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused, convicted of violating Articles 80, 86, 92 and 121 of the Uniform Code of Military Justice, 10 USC §§ 880, 886, 892 and 921, was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for three years. Intermediate reviewing authorities having affirmed, we granted his petition for review to determine:

a. Whether the evidence was sufficient to support a finding of guilty of larceny.

b. Whether the law officer's instruction concerning constructive knowledge of a regulation was correct.

In relation to the larceny charge, the following evidence was presented to the court-martial. Sometime during the evening of December 30–31, 1956, the Tokyo Main Post Exchange at Hardy barracks was burglarized. The illegal entry was discovered when it was noticed that the lock on the door leading to the camera and watch department had been broken. Upon investigation, the manager found certain valuable merchandise missing and an inventory check revealed that fifty-four watches and five cameras of a total value of $3,305.80 were unaccounted for. Apparently the thief had gained entrance to the shop by utilizing a certain ladder which was erected on the premises for use by maintenance personnel. Among the fifty-four watches listed as missing

**440**

were some identified by the brand names of Universal and Rolex, one of the latter make having a list price of $275.00. Sometime about 1:00 or 2:00 a.m. on December 31, 1956, the accused approached Mr. Yuji Watanabe, a Japanese bartender at the Cozy Club which was located across the street from the post exchange. The accused asked the bartender to dispose of two watches and a camera which he left with the latter for purposes of sale. One of the watches was manufactured by Rolex, and it had a $275.00 price tag affixed. The three items appeared new to the bartender, but his salesmanship was only partially successful, for he disposed of the camera but could not sell the watches. Subsequently, the proceeds from the sale of the camera were given to the accused and the two watches were returned to him. During the course of the conversation with the bartender, the accused furnished him the names of about twenty other watches which he desired to have sold. The bartender made a list of the merchandise, but later he became suspicious about the transaction and disposed of the memorandum by burning because he feared it might be used subsequently as an item of evidence. He, however, remembered that the accused named Rolex and Universal watches as being part of his possessions. The bartender again saw the accused sometime in March 1957, at which time he was requested by the accused not to testify as to their dealings. In relation to other charges involved at that trial, the evidence showed that the accused was involved in Japanese black-market activities which consisted of purchasing and selling post exchange items to unauthorized persons.

After reviewing the evidence hereinbefore related, we find it amply sustains the conviction of the accused. United States v McCrary, 1 USCMA 1, 1 CMR 1. The corpus delicti was established when the Government adduced proof that property belonging to a post exchange of a certain type and value was missing, which shortage was under suspicious circumstances and did not occur in the usual course of business. United States v Leal, 7 USCMA 15, 21 CMR 141. United States v Evans, 1 USCMA 207, 2 CMR 113. Here the Government met that test for sometime during the nighttime when business was not being transacted, more than $3,000 worth of cameras and watches disappeared; the shelf spaces which formerly displayed them were bare; and the lock on the door leading to the department was forcibly broken. Under those conditions, to say that an unlawful taking was not established is sheer nonsense. With the corpus delicti established, it was the burden of the Government to connect the accused with the taking and in this instance it was required to resort to proof by circumstantial evidence. Yet the link of the chain which binds the accused to his crime is well forged. The loss of post exchange merchandise occurred during the same evening that a private, with apparently no known source of income, appeared in a bar seeking to dispose of at least twenty watches and several cameras. From whence did he beget this sudden and unusual bounty? The court-martial members chose to believe that it came to him through theft from the exchange rather than by some other form of acquisition. Certainly their conclusion in that regard was reasonable, as there was no dispute about the unlawful taking; the testimony furnished by Watanabe was unchallenged and undisputed; and the similarity of items stolen and possessed is more than coincidental. That the court-martial weighed carefully the evidence is demonstrated by their limited findings. The charge alleged the theft of fifty-four watches and five cameras which was all the merchandise taken from the post exchange. But the court members, by exception and substitution, found the accused guilty of the theft of the Rolex and the Universal watches and one Revere movie camera. That was the property which a third party could identify and the court chose to go no further than to find that the accused stole the property which had been seen in his possession by others. Certainly the evidence in the record, coupled with the reasonable inference flowing there-

441

from, is sufficient to sustain the accused's conviction for the theft of those items. See State v Hall, 105 Utah 162, 145 P2d 494 (1944).

Counsel for the accused contend that the chain of circumstances is not forged completely because the watches and camera were not identified by serial numbers or other distinguishing features. In that connection, it is argued that the price tag on the one watch delivered to the go-between was pasted on the back, which was an unusual place for such a marking. That refinement is unimportant in the backdrop of this record. The similarity in makes, the time and place of the meeting, and the quality and quantity of merchandise involved point the finger of guilt directly at the accused. In addition, the fact that he importuned the bartender not to testify bespeaks a guilty mind. Therefore, in its totality, the evidence is not at all weakened by the bartender's recollection of the location of the price tag.

In relation to the second granted issue, there is little to say. The accused was charged with violating and attempting to violate a regulation of the United States Army, Far East. The law officer instructed the court that the Government was not required to prove that the accused had actual knowledge of the regulation. At the time of this appeal, boards of review were in conflict as to whether actual knowledge had to be proved. We have recently held that knowledge is not an element of the offense of violating a regulation issuing from the United States Army, Far East. United States v Stone, 9 USCMA 191, 25 CMR 453; see also United States v Statham, 9 USCMA 200, 25 CMR 462. The law officer's instruction was erroneous in that it required the Government to prove more than was necessary. The error being beneficial to the accused, he cannot be heard to complain.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.