SHERMAN DAVIS V. STATE OF NEBRASKA.

[FILED JANUARY 20, 1891.]

1. **Self-Defense.** While a person has the right when assaulted by another in such a manner as to excite in him a reasonable belief that he is in danger of losing his life or receiving great bodily injury, to resist the attack by using such force as is apparently necessary to defend himself, yet, if after he has secured himself from danger, he takes the life of his assailant, in the spirit of revenge, he cannot claim exemption from punishment on the ground of self-defense.

2. **A motion for a new trial** in a criminal case, to avail the party making, must be filed at the term of court at which the verdict is returned, and, except for newly discovered evidence,

within three days after the verdict was rendered, unless unavoidably prevented.

3. **Review.**  *Held,* That the verdict is sustained by the evidence and that the sentence was not excessive.

ERROR to the district court for Richardson county. Tried below before APPELGET, J.

*E. W. Thomas,* and *C. Gillespie,* for plaintiff in error, cited: *Vollmer v. State,* 24 Neb., 838; *Pharr v. State,* 9 Tex., 129; *Bryant v. State,* 7 N. E. Rep. [Ind.], 217; 2 Thompson, Trials, 15–41, sec. 1548, 2160, note; *State v. Turpin,* 77 N. Car., 473, 477; Desty's Am. Crim. Law, sec. 31*a.*

*William Leese, Attorney General, contra,* cited: *Sweeney v. State,* 35 Ark., 586; *Murphy v. People,* 37 Ill., 447; *State v. Brown,* 12 Minn., 538; *Clark v. State,* 35 Ga., 75; *State v. McDonnell,* 32 Vt., 491; *Hague v. State,* 34 Miss., 616; *State v. Gillick,* 7 Ia., 287; *State v. Knight,* 43 Me., 11; *State v. Johnson,* 3 Jones [N. Car.], 266; *State v. Turner,* Wright [Ohio], 28; *Hill's Case,* 2 Gratt. [Va.], 594; *Milton v. State,* 6 Neb., 136.

NORVAL, J.

The plaintiff in error was indicted in the district court of Richardson county for the murder of James W. Harper.. He was tried at the March, 1889, term of said court, a verdict of manslaughter was returned, and he was sentenced to imprisonment in the penitentiary for eight years.

On December 10, 1888, the date of the tragedy, the defendant and deceased resided in the town of Humboldt, in this state.   About 3 o'clock in the afternoon of that day, Harper and Davis had a quarrel in Kohns's saloon.   It appears that the deceased had accused Davis of stealing, and the charge had come to the ears of the latter.   When they met in the saloon angry words passed between them.

16

Davis took hold of Harper and invited him to go with him out of the corporation and they would settle the matter, to which Harper replied, " I will go with you at any time and fight with you, but if you go out with me your folks won't know you afterwards." Mr. Bullis, the marshal, interfered and stopped the quarrel.

Shortly afterwards the deceased borrowed a revolver, stating that he wanted it to kill a dog that had been visiting his meat house. Davis had been informed that Harper had the weapon. About dark the same day Davis met Harper at Bacon's livery stable, the latter being somewhat intoxicated. The quarrel was here renewed. Harper called Davis a thief and other hard names. The marshal threatened to arrest Harper, who replied: " We'll go outside of the corporation," and addressing the accused he said, " You dars'nt go." Davis answered, " By God, I will go," and both started south in the direction of their homes, with Davis a step or two in the lead. They had gone but a short distance from the barn when Davis told Harper to come up beside him or walk on ahead, as he had something in his pocket. Harper replied with an oath it was none of his business what he had in his pocket and for him to walk on ahead. This, Davis declined to do, and Harper said, " We'll settle this right now and you are a damned son of a bitch." The defendant then caught Harper, and about the same instant the deceased drew his revolver from his pocket. In the struggle that followed both fell with Harper underneath. Davis wrenched the revolver out of his hands and hit the deceased two or three times with it, breaking his skull. John Cowman, who witnessed the entire transaction, ran up and told Davis to stop, and made him give up the revolver. The defendant, after the revolver had been taken away, hit Harper with his fist, and after Cowman had pulled Davis up, the defendant kicked the deceased. From the effect of the blows Harper died in about ten days or two weeks after

receiving the injury.   The plea of the defendant was self-defense.   The deceased was over fifty years old, weighing not more than 125 pounds, and physically was not the equal of the defendant.

The evidence shows that after the weapon had been taken from the deceased, he was in the power of the defendant, and that Davis was not then in any real or apparent danger.   The fatal blows were given without any legal excuse or justification therefor.   The defendant . had the right to employ such reasonable means within his power as were apparently necessary to prevent the deceased from killing him or inflicting great bodily harm; yet, after the defendant had secured himself from danger, which he did by taking the revolver from the deceased, he was not justified in taking his life.   After the defendant had been taken off of the deceased, he kicked the helpless victim.   The facts and circumstances disclosed by the testimony show that the accused struck the fatal blows in revenge.   The verdict is sustained by the evidence.

Several errors are assigned upon the giving and refusing of certain instructions, and upon the rulings of the court upon the admission of testimony.   To entitle the defendant to review these alleged errors, a motion for a new trial pointing out the errors complained of must have been filed in the district court within the time provided by statute. The record shows that the verdict was rendered March 14, 1888, and that the motion for a new trial was filed March 18.

Section 490 of the Criminal Code confers authority upon a district court to grant a new trial, after a verdict of conviction, on the application of the defendant.   Section 491 provides that "The application for new trial shall be by motion upon written grounds, filed at the term the verdict is rendered, and shall, except for the cause of newly discovered evidence material for the party applying, which he could not with reasonable diligence have discovered and

produced at the time, or [be] within three days after the verdict was rendered, unless unavoidably prevented. In assigning the grounds of such motion, it shall be sufficient to assign the same in the language of the statute, and without further or other particularity."

The provisions of the statute, limiting the time within which a motion for a new trial in a criminal case must be made, are mandatory. The court has no power to extend the time for filing such a motion beyond three days except for newly discovered evidence, unless the party " was unavoidably prevented " from making the application in time. If the court could grant an extension of one day, it could extend the period for one month or six months.

Section 316 of Code of Civil Procedure, relating to the time in which motions for new trials must be made in civil cases, is identically the same as section 491, above quoted. Section 316 has been construed by this court in numerous cases, and it has been the uniform holding that these provisions were mandatory. (*Fox v. Meacham,* 6 Neb., 530; *Roggencamp v. Dobbs,* 15 Id., 620; *Aultman v. Leahey,* 24 Id., 286.)

It has been held that under section 491 of the Criminal Code a motion for a new trial, to avail the party filing it, must be made at the term of court at which the verdict is rendered, and except for newly discovered evidence, within three days after the verdict was rendered, unless unavoidably prevented. (*Bradshaw v. State,* 19 Neb., 644; *Ex parte Holmes,* 21 Id., 324.)

In the case at bar the motion for a new trial was filed the fourth day after the return of the verdict. It is not based on the ground of newly discovered evidence. No showing was made excusing the delay, nor is there any finding of the trial court that the defendant was unavoidably prevented from filing his motion before the time allowed him by law had expired. The errors assigned in the motion for a new trial could not be considered by the court below, and cannot be reviewed here.

We are asked to reduce the sentence.    Upon a careful examination of the evidence contained in the bill of exceptions, we are satisfied that the imprisonment imposed by the trial court was not excessive, and the application is denied.

The judgment of the district court is

AFFIRMED.

THE other judges concur.