STATE v. SAWYER.

No. 3296.   Decided April 3, 1919.   On Application for Rehearing
July 8, 1919.   (182 Pac. 206.)

1.  CRIMINAL LAW—NEW TRIAL—TIME FOR FILING MOTION—COURT'S
    DISCRETION TO EXTEND. Although Comp. Laws 1917, sections
    6619, 7023, give district court discretionary power to allow
    motion for new trial to be made in civil cases and filed after
    the time limited by the Code, section 9200 limits application

State v. Sawyer, 54 Utah 276.

for new trial in a criminal cause to written notice served within five days after verdict, and in such cases the court is without discretion to extend such time beyond such limit, procedure in criminal cases being limited to that prescribed in the Code by section 8547, notwithstanding section 7892 provides that penal statutes shall be liberally construed. (Page 278.)

2.  CRIMINAL LAW—APPEAL—TIME OF NOTICE—ENTRY OF JUDGMENT. Where a verdict of guilty was rendered May 17, 1918, and judgment upon the verdict was not rendered and entered until the 21st of the following September, and on the same day defendant served and filed his notice of appeal to the Supreme Court, the notice was in time, being within two months after the entry of judgment appealed from, in view of Comp. Laws 1917, section 9209. (Page 279.)

3.  CRIMINAL LAW—LARCENY—OWNERSHIP OF PROPERTY—CONFLICTING TESTIMONY—CONCLUSIVENESS OF JURY'S FINDINGS. In a prosecution for grand larceny, although evidence of state's and defendant's witnesses was in direct conflict upon the issue of ownership, *held* that there was evidence sufficient to justify conviction, and the Supreme Court has no power to disturb the jury's finding thereon. (Page 280.)

4.  CRIMINAL LAW—INTENT OR MOTIVE—DEFENDANT'S BELIEF OF HIS OWNERSHIP. In a prosecution for larceny of a steer, the court's refusal to permit the defendant to testify as to his intent and belief in possessing and claiming the animal as his own property was clearly error, in view of Comp. Laws 1917, section 7908, providing that "in every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence" since motive or purpose was an issue.[1] (Page 282.)

5.  CRIMINAL LAW—EXCLUSION OF EVIDENCE—HARMLESS ERROR. Although the court erroneously refused to permit the defendant to answer questions relating to his honest belief that the animal he was accused of stealing was his own property, yet where he was permitted to testify at great length to his acts and conduct toward the animal and circumstances of its possession, his reasons for claiming ownership, its appearance, condition, and causes therefor, and his intent and purpose, the error was not prejudicial, and is not reversible. (Page 283.)

6.  CRIMINAL LAW—APPEAL—OBJECTION THAT JURY WAS NOT PROPERLY ADMONISHED—OBJECTION MADE TOO LATE. Where the only objection made by counsel in a larceny trial was acquiesced

---

[1] *Conway* v. *Clinton*, 1 Utah, 215; *People* v. *Monk*, 8 Utah, 35, 28 Pac. 1115.

in by the court, and the sheriff ordered to carry the court's instructions to the jury, who had gone to view the steer in question, that they should merely view it, and not throw it and examine it closely, the contention that they were not properly admonished came too late. (Page 284.)

7. CRIMINAL LAW—INSTRUCTION—EVIDENCE—SUFFICIENCY. An instruction in the language of Comp. Laws 1917, section 8285, defining larceny and making unsatisfactorily explained possession of recently stolen property prima facie evidence of guilt, would warrant a reversal of conviction had the jury not been warned that mere possession and unsatisfactory explanation were alone insufficient evidence to warrant a conviction.[2] (Page 286.)

Appeal from District Court, Fifth District, Iron County; *D. H. Morris*, Judge.

William H. Sawyer was convicted of grand larceny, and he appeals.

AFFIRMED.

*Edmund H. Ryan*, of Cedar City, for appellant.

*Dan B. Shields*, Atty. Gen., and *O. C. Dalby* and *Herbert Van Dam, Jr.*, Asst. Attys. Gen., all of Salt Lake, for the State.

CORFMAN, C. J.

The defendant, William H. Sawyer, was convicted of the crime of grand larceny, May 17, 1918, in the district court for Iron county, and was by that court sentenced to a term of imprisonment on September 21, 1918. He appeals from the judgment.

The Attorney General contends that the appeal should be dismissed, and has interposed a motion for dismissal upon the

---

[2] *State* v. *Potello*, 40 Utah, 56, 115 Pac. 1023; *State* v. *Barretta et al.*, 47 Utah, 479, 155 Pac. 343; *State* v. *Converse*, 40 Utah, 72, 119, Pac. 1030; *State* v. *Bowen*, 45 Utah, 130, 143 Pac. 134.

following grounds: (1) That the district court exceeded its jurisdiction in extending time in which to prepare, serve, and file motion for new trial; (2) that motion for new trial was not filed within the time allowed by the district court; (3) that notice of appeal was not filed in time allowed by law.

On the same day, after rendition of the verdict, defendant applied for and was by the trial court given sixty days to prepare, serve, and file a motion for a new trial. The motion for new trial was not served until July 12, 1918, nor filed until July 18, 1918, more than sixty days after rendition of the verdict of conviction.

Comp. Laws Utah 1917, section 9200, among other things not mentioned here, provides:

"The application for a new trial must be made upon written notice of motion designating the grounds upon which it is made, and must be served and filed within five days after the rendition of the verdict."

It is apparent that defendant did not conform with the order of the court extending to him sixty days in which to prepare, serve, and file his motion. Further, the order of the court extending the time for defendant to move for new trial beyond the five-day period applicable here gives rise to the question whether or not the court did not exceed its jurisdiction. The state contends that the provision of the statute is mandatory, that the court had no discretionary power, and that it exceeded its jurisdiction in granting the defendant additional time to move for a new trial. So far as we are able to ascertain, the question has not heretofore been raised in this jurisdiction under criminal procedure. Under our civil procedure the statutes (Comp. Laws 1917, sections 6619, 7023) expressly provide that the district courts have the discretionary power to allow a motion for a new trial to be made and filed after the time limited by the Code upon application and a proper showing, but no like provision is to be found under our Penal Code, nor in the statutes with reference to criminal procedure.

Under our Code of Criminal Procedure it is provided by Comp. Laws 1917, section 8547, that "the procedure in criminal cases in the courts of this state shall be as prescribed in

this Code,'' and while it is true that it is provided by Comp. Laws 1917, section 7892, that the rule of the common law that penal statutes are to be strictly construed has no application to our statutes, and that our statutes are to be more liberally construed with a view of effecting their objects and to promote justice, still, we think, in the absence of some express provision in the Code of Criminal Procedure to the effect that the courts may exercise some discretionary power in extending the time within which a notice of motion for new trial may be made, the strict letter of the statute must be adhered to, and therefore it is beyond the power of the courts to extend the time limited by section 9200, supra. We think that not only the best interests of the criminally accused but of society and the state demand prompt attention to criminal procedure and final and effective determination of the cases in which parties are charged with crime. Under our statutes, in criminal cases, the grounds upon which a new trial may be applied for are clearly expressed, and we cannot conceive how in any case the interests of the accused and complete justice will not be best subserved by requiring him to act within the time expressly limited by the statute. *Davis* v. *State,* 31 Neb. 240, 47 N. W. 851; *Hubbard* v. *State,* 72 Neb. 62, 100 N. W. 153, 9 Ann. Cas. 1034; *Ward* v. *State,* 171 Ind. 565, 86 N. E. 994; *State* v. *Maddox,* 153 Mo. 471, 55 S. W. 72; *State* v. *Tolla,* 73 N. J. Law, 249, 63 Atl. 338; *State* v. *Hayden,* 131 Iowa, 1, 107 N. W. 929.

However, the state's motion to dismiss the appeal must be denied. The record shows that while the verdict of conviction by the jury was rendered May 17, 1918, the judgment upon the verdict was not rendered and entered until September 21, 1918. On the same day, September 21, 1918, the defendant served and filed his notice of appeal to this court. As provided by Comp. Laws 1917, section 9209:

"All appeals in criminal cases must be taken within two months after the entry of the judgment appealed from."

Therefore this appeal was taken in time.

As to the merits of the appeal: It is first contended by the defendant that the evidence is insufficient to sustain the verdict.

The testimony shows that the defendant, a resident of Cedar City, Utah, for about twenty-five years previous to the offense charged had been engaged in farming and stock raising. He had ranged his stock on what is known as the Cedar Bottoms in the winter time and on the Cedar Mountains in the summer time. He owned two ranches, one on the Cedar Bottoms, and one on the Cedar Mountains, and moved his stock from ranch to ranch for the purpose of feeding and grazing them. The complaining witness, Hugh L. Adams, also owned a ranch at Cedar Bottoms adjoining the defendant's ranch. Witnesses for the defendant testified that in the spring of 1915 a bull calf was born from one of defendant's cows at his Cedar Bottoms ranch; that it was kept there and was neither branded nor marked. Later this calf, after being kept for a while for stock-breeding purposes, was castrated and turned out on the open range. The testimony further shows that the defendant, on about November 17, 1917, notified the sheriff of Iron county of his intention of driving his stock into Nevada for the purpose of grazing them there, and for that reason requested the sheriff to make an inspection so that his animals might be driven out of Utah after due inspection as required by law. The sheriff, on inspecting defendant's stock for that purpose, discovered that the animal in question was not branded, bore earmarks not claimed by defendant, and therefore ordered the defendant not to remove it until further investigation could be made. The attention of Mr. Adams, the complaining witness before the magistrate, was called to the animal, and he made claim that the animal had been stolen, and that it belonged to him. At the trial much testimony of a conflicting nature was given as to the identity and the ownership of the animal. The witnesses for the defendant testified that they were acquainted with it, and that it was owned by the defendant. The witnesses for the state, directly to the contrary, testified it was owned by Adams. The jury were permitted, under the instructions of the court, to view the animal. After doing so and considering the testimony, by their verdict they evidently believed the state's witnesses. We have no power to disturb

their finding in that regard, even were we disposed to do so. As we view the testimony, the contention made that the evidence is insufficient to justify the verdict is wholly untenable.

The defendant next complains that the trial court committed errors in the admission and exclusion of testimony over defendant's objections. Many of the assignments made by the defendant are wholly without merit, and we deem it unnecessary to discuss them. Counsel for defendant suggests in his printed brief and argument that they may be grouped in one discussion, and then proceeds to argue that the trial court committed error in the exclusion of certain testimony tending to show that the intent of defendant in claiming possession and ownership of the animal in question was under a bona fide claim of right and without any intent to steal the animal. In the course of the trial the following questions were propounded to the defendant in that regard:

"Q. Did you on that occasion when Mr. Fife (the sheriff) came there, on the Antelope road, to inspect your cattle—did you make any effort to rush the cattle by or crowd them by rapidly, so as to prevent a full opportunity, his opportunity to inspect them?"

"Q. Did you honestly believe that stag to be your property and your animal that you raised as you testified?"

"Q. Did you honestly believe that stag at that time to be your property? And do you yet honestly—do you still honestly believe that to be your property and your steer?"

The first question above was objected to by the state on the ground that it was leading and suggestive, and each of the other questions on the ground that they were self-serving declarations. The objections were sustained by the court, and the defendant was not permitted to answer.

We think the trial court's refusal to permit the defendant to testify as to his intent and belief in possessing and claiming the animal in question was clearly error. Under the facts and circumstances as shown by this record the defendant should have been permitted to testify that he believed the animal he was accused of feloniously stealing and taking away was his property and his possession a rightful one.

Under our Penal Code (Comp. Laws 1917, section 7908) "in every crime or public offense, there must exist a union or joint operation of act and intent, or criminal negligence."

If the defendant honestly believed the animal in question to be his own property, that it was his intent and purpose of possessing and driving it into Nevada as such, then, even though the testimony conclusively shows he was mistaken and the animal was the property of another, he had no motive or purpose to commit crime, and the question as to what the defendant honestly believed and intended was one of fact to be submitted to and determined by the jury. In *Conway* v. *Clinton,* 1 Utah, 215, an early civil case, where one of the issues was the malice of defendant who was charged with maliciously and wantonly destroying the goods of plaintiff, the territorial Supreme Court held:

"Where the motive of a party is thus in issue, he may testify to it himself. If he should say his motives were malicious, it would properly inure to the advantage of the plaintiff, and it is none the less competent for him to disclaim the malice. Doubtless, a witness in thus speaking of his own motives may state as a fact that which no other witness can directly and categorically deny, but the weight of the testimony is for the jury to determine."

Then again, in a criminal case *People* v. *Monk,* 8 Utah, 35, 28 Pac. 1115) the territorial court speaking approvingly of the rule contended for by defendant here, and quoting from Bishop on Stat. Crimes, section 132, said:

" 'One who, while careful and circumspect, is led into a mistake of fact, and doing what would be in no way reprehensible were they what he supposes them to be, commits what, under the real facts, is a violation of a criminal statute, is guilty of no crime.' In such a case a criminal mind and intent is wanting."

Speaking of the rights of the accused as a witness, Underhill, Crim. Ev. section 59, says:

"He must be permitted fully to unfold and explain his actions, and to state the motives which he claims prompted them. It is, within certain limits, relevant for him to state what intention was present in his mind when he participated in a transaction which is in issue."

In speaking of the rule contended for, Wharton, in his admirable work on Criminal Evidence (10th Ed.) at page 1698, where many authorities are collated and may be found, says:

" * * * The rule is universal that on a prosecution for crime, whenever the intent of the accused is relevant to the issue, or when-

ever the intent of the accused in doing the act charged becomes material, the accused may testify as to his own motive and intent."

While we must hold that the rule contended for is a proper one, and that the refusal of the trial court to permit the defendant to make answers to the questions thus propounded to him by his counsel ordinarily would be reversible error, after carefully reviewing the record before us as a whole, we are of the opinion that the defendant was not prejudiced by the rulings of the court complained of by him.

The defendant was permitted to testify at great length to his acts and conduct toward the animal, the circumstances under which it came to his possession, his reasons for claiming ownership, its physical appearance and condition, the causes therefor, and his intent and purpose in seeking to drive it from the state. Moreover, he was on other occasions during the progress of the trial permitted, without objection, to make answers to very similar questions to those of which he here complains of being denied. We quote:

"Q. Was the stag that you started from the Cedar Bottoms with the bunch of cattle, that you notified Sheriff Fife about to come and inspect, the stag that you claimed as one you had raised and believed to be yours? A. Yes, sir."

"Q. Do you still upon the inspection of the stag identify it as the one you have raised as you have testified to and the one that you believe to be yours? A. Yes, sir."

Then, again, the defendant, after being recalled by his counsel for further examination at the trial, was permitted to testify, without objection, as follows:

"Q. That is your ranch in the mountains. Mr. Sawyer have you ever in your life, and more especially during the year 1917, knowingly or intentionally stolen or taken any animal belonging to Hugh L. Adams? A. No, sir."

The import and meaning of the defendant's testimony thus received is, to our minds, precisely the same as would have been his testimony had the court permitted him to answer the questions he now complains of being denied. He therefore suffered no prejudice.

Upon the trial, the district attorney requested that the

jury be permitted to view the animal in question and throw it so as to make an examination of it. Counsel for the defense objected to the jury throwing the animal or making any physical examination of it. Defendant complains that the jury was not properly admonished nor instructed before retiring. The only objection made by counsel in this regard was that the jury should not throw the animal nor be permitted to make a physical examination. After the jury had retired counsel renewed his objection in the following manner:

"Counsel. We object to any examination on the part of the jury of the steer in question, other than viewing it, and we except to the court's statement or instruction to the jury to the effect that they could make any examination of the steer in question that they might see fit or desire to make.

"Court: Let the record show the objection. After consideration the court will instruct the sheriff to allow the jury to view the animal, but to make no physical examination. I believe the objection is well taken. Will you go down, Mr. Fife, to them and tell them. Will that be satisfactory to you, Mr. Ryan, if I send word by the sheriff?

"Counsel: Oh, yes.

"Court: Very well. Go down and just tell them not to throw the animal, but to just view it without handling it."

The contention of counsel at this time that the jury was not properly admonished by the court comes too late. The only objection made by counsel at the trial was     6 acquiesced in by the court. Moreover, we think the record shows that the jury was admonished by the court and duly cautioned not to receive any extraneous testimony while viewing the animal, substantially as required by the statute.

Defendant next assails the instructions given by the court to the jury. The court, in charging the jury, quoted the language of the statute (Comp. Laws 1917, section 8285) as follows:

"Larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another. Possession of property recently stolen, when the party in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt."

Counsel for defense excepted to the giving of the instruction, especially the last paragraph with reference to unex-

plained possession of stolen property, stating his reasons to be that the last paragraph is not the law of the state of Utah, and further that this paragraph is not intended to define the crime of grand larceny, and is not within the meaning of the term "grand larceny."

The paragraph complained of certainly is the law of this state, and so declared to be by this court in the very able and exhaustive opinion written by Mr. Justice Straup in *State* v. *Potello,* 40 Utah, 56, 119 Pac. 1023. The language of the statute as there construed was held to mean that mere proof of larceny and recent possession will not make out a prima facie case of guilt. We quote from the opinion:

"We think a fair meaning of the statute is that, to make a prima facie case of guilt, the state, in the absence of other evidence, must show the larceny, recent possession in the accused, *and that he failed to make a satisfactory explanation.*" (Italics ours.)

The effect and meaning of the statute was again before this court in a more recent case, *State* v. *Barretta et al.,* 47 Utah, 479, 155 Pac. 343, and again discussed by Mr. Justice Straup, the writer of the court's opinion. It was there held, as in the Potello Case, that the provision of the statute complained of was meant for the guidance of the trial court only, in determining when a given case should go to the jury, and that the giving of the statute as a charge was an improper one. It was also there held that while possession of recently stolen property not accompanied by satisfactory explanation warrants a submission of the case to the jury, the burden, nevertheless, remains with the state to prove the accused guilty beyond a reasonable doubt. To the same effect were the opinions written by the same justice in *State* v. *Converse,* 40 Utah, 72, 119 Pac. 1030, and *State* v. *Bowen,* 45 Utah, 130, 143 Pac. 134. In all the cases before this court it has been held that possession of recently stolen property without satisfactory explanation is an inference of guilt, and constitutes a circumstance to be taken into consideration by the jury in arriving at a verdict.

The instruction complained of, standing alone, without any qualification or warning being given to the jury, that

mere unsatisfactory, unexplained possession alone is in-          **7**
sufficient evidence upon which to find a verdict of con-
viction, would be, in our opinion, most harmful, and warrant us
in reversing the judgment as was done in the case of *State* v.
*Barretta,* supra; but in the case at bar, as in the *Bowen Case,*
supra, which was affirmed, the trial court, in effect warned
the jury that mere possession and unsatisfactory explanation
alone are insufficient to warrant a conviction.

After defining larceny, and giving the provision of the
statute complained of, the trial court proceeded to further
charge:

"The court instructs you that in this case the burden of proof
rests upon the prosecution to make out and prove to the satisfaction
of the jury beyond every reasonable doubt every material allegation
in the information, and, unless that has been done, the jury should
find the defendant not guilty.

"In every crime or public offense there must exist a union or
joint operation of act and intent, or criminal negligence, and that
the burden is always upon the prosecution to establish each of
such elements beyond a reasonable doubt before a conviction can
be had.

"You are instructed that should you believe from the evidence
that the defendant did have the steer in question in his possession
at the time and place set out in the information, but that the
defendant so had the said steer in his possession openly and
avowedly and under a claim of title or ownership, in good faith,
your verdict should be in favor of the defendant, not guilty.

"If you find the defendant took possession of the animal in ques-
tion, it will be your duty, from the evidence, to determine his in-
tent in so doing by the surrounding circumstances and all the
evidence in the case before you which tends to show the intent.

"You are instructed that where one in good faith takes the
property of another, honestly believing it to be his own, or that
he has a right to its possession, he is exempt from the charge of
larceny, there being no criminal intent, and therefore, if the jury
believe from the evidence that the defendant William F. Sawyer,
or in connection with William H. Sawyer, took the steer of Hugh
L. Adams, as alleged in the information, honestly believing it to be
his own, or that he had a right to its possession, the jury should
find him not guilty; but the belief should be an honest one and
not a mere pretense to shield himself from conviction. Further-
more, if the jury have a reasonable doubt arising from the evidence,
as to whether the defendant took the said steer, as aforesaid, having
an honest belief as to his right to take it, the jury should give him

the benefit of such reasonable doubt and acquit him; in other words, if you have a reasonable doubt of the felonious intent of the defendant in taking the steer, you should acquit the defendant."

In this case there was absolutely no dispute as to the defendant's possession of the animal. The defendant claimed ownership, that he had raised the animal from a calf. That was his main defense. Directly in conflict with the defendant's testimony, the state produced testimony to show ownership in Adams, and that Adams had raised the animal from a calf. Both the defendant and Adams claim to have castrated the animal; the defendant in the usual manner, Adams by having to cut a hole in the belly, leaving an unusual scar. There was testimony tending to show that the animal bore the earmarks used by Adams to identify his animals, and that an attempt had been made to obliterate these marks. According to the testimony, contradictory statements were made by defendant as to the condition of the animal's ears when found in and taken from the possession of the defendant by the sheriff. The jury viewed the animal, and it was within their province alone, not ours, to determine the guilt or innocence of the accused. The instructions as a whole were, in our opinion, so clear and explicit that by no possibility could the jury be led astray by the giving of the particular instruction complained of in the language of the statute.

What has been said as to the particular statute and instruction under consideration applies to the other objections made to the instructions of the court. We find no prejudicial errors assigned.

As to the contention that the district attorney made unwarranted statements concerning the testimony and in presenting the case to the jury, we find nothing in the record that warrants the slightest criticism.

The complaint made that the judge of the court indicated his views and conclusions bearing upon the testimony adduced at the trial is equally untenable. The trial of the defendant, in its entirety, was conducted fairly and impartially by the court.

Finding no reversible error in the record, the judgment must be and accordingly is affirmed.

State v. Sawyer, 54 Utah 276.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.

ON APPLICATION FOR REHEARING.

CORFMAN, C. J.

An application for rehearing has been filed by defendant. We think we gave due consideration to the matters complained of in the petition, and arrived at the right conclusions before. Some of the rulings of the trial court complained of by the defendant were not properly objected to, and exceptions were not properly taken by the defense in the course of the trial. We might have been more explicit in our opinion in pointing out the particulars in which the defendant failed to seasonably and in a proper manner raise his objections. However, it would subserve no good purpose to more extensively review them now, when we are convinced the result must be the same and the judgment of conviction by the district court was right and should be sustained on the record before us. Again, complaint is made of certain instructions given by the court to the jury. More particularly counsel for the defendant discuss and complain that the court committed error in giving this:

"You are instructed that possession of property alleged to have been stolen is not alone sufficient evidence to warrant a conviction, and if a reasonable explanation of the possession of such property is given by the defendant, and such explanation is not challenged, the defendant is entitled to an acquittal."

The defendant is not in a position to complain. The instruction as given was at the special request of the defendant, and his own language was employed by the court in giving it. Litigants before the appellate courts, in any event, must not be permitted to complain of errors committed by the trial court upon their own invitation.

It is therefore ordered that the opinion of this court heretofore rendered, affirming the judgment of conviction, stand, and that defendant's petition for a rehearing be denied.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.