310 P.2d 787

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Homer NESBITT, Defendant-Appellant.**

No. 8458.

Supreme Court of Idaho.

April 11, 1957.

Rehearing Denied May 20, 1957.

2

4

C. H. Higer, Emmett, Donart & Donart, Weiser, Norris & Welch, Payette, for appellant.

Graydon W. Smith, Atty. Gen., John R. Smead, Asst. Atty. Gen., Louie Gorrono, Pros. Atty., Emmett, for respondent.

KEETON, Chief Justice.

Appellant was charged with the crime of intentionally and unlawfully obstructing a

public road in violation of Sec. 18–3907, I.C., by placing a large pile of dirt and a tractor therein, with the intent and purpose of obstructing the use of the road. He was tried and by a jury found guilty. Judgment was entered and sentence imposed. Appeal from the judgment was perfected.

The State claims the road obstructed is one acquired by prescription which runs from the vicinity of Emmett to the Third Fork Guard Station in Gem County, approximately five and one-half miles in length, and in part crosses the land of appellant or his relatives.

The obstructing of the road by appellant in the manner charged is not denied; it is his contention that the road or highway so obstructed is not a public road.

The evidence relied on by the State to establish that the road is a public highway is to the effect that the road had been used by the public generally without interference since 1893, or before, and to the time appellant obstructed it in July, 1955. The road has for many years been traveled and generally used as a public road without interference by farmers, the Forest Service, loggers and others. The road was repaired and graded and kept up at county or other public expense at different times from 1931 to and including 1955. In 1933, the road was worked on and repaired at County expense sufficient to enable the government to move equipment over the road to camps being constructed by it. The United States Forest Service, subsequent to 1909, and particularly in the 1920's improved, drained and worked on and kept up the road. Work at public expense was also done on the road at different times in 1934, 1948, 1949, 1950, 1951, 1953, 1954, and 1955. Appellant did some work on the road for which he was paid by the county in 1953. The State Highway Department performed work in upkeep and repair in 1953 and 1954.

By a lease dated January 1, 1955, appellant is a lessee of a part of the land across which the road runs.

Appellant had in 1954 and 1955 granted permission to MacGregor Triangle Company and Boise Payette Lumber Company to use the road across the land where the road obstruction was placed for a consideration paid.

When the road was first established the land across which it runs was mostly public domain. Patent to the land over which a part of the road runs, where obstructed by appellant in 1955, was issued to Elmer H. Nesbitt in March, 1926. There was some testimony to the effect that there were unlocked gates on some parts of the road. The road had not been laid out and recorded as a public road by the Board of County Commissioners, but is shown on county road maps prepared in October, 1915, and December, 1937.

The first question presented for determination is whether the road so obstructed by appellant is a public road.

6

■ Prior to 1893 all roads used as such for a period of five years are defined as highways. Sec. 851, Rev.Stat. of 1887. Under the statute as now in effect, Sec. 40–103, I.C., and in effect so far as pertinent here since 1893, roads may be laid out and recorded as highways by order of the Board of Commissioners, and all roads used as such for a period of five years, provided the latter shall have been worked and kept up at the expense of the public, or located and recorded by order of the Board of Commissioners are highways. Where the public uses a highway or road for the statutory period of five years and it is worked and kept up at public expense, a highway is established by prescription. Recording of it as such by the Board of County Commissioners is not necessary. Meservey v. Gulliford, 14 Idaho 133, 93 P. 780.

■ It is not required that a prescriptive road be worked on for five consecutive years, nor does the statute require work to be done throughout the road's entire length, but only requires that such work as may be needed be done when necessary, for the statutory period, in order to acquire a right by prescription. Otherwise, a highway acquired by prescription could be obstructed with impunity at any point where it had not been worked or kept up at public expense. Gross v. McNutt, 4 Idaho 286, 38 P. 935.

■ The testimony clearly discloses that necessary work on the road in question was done as needed at public expense for more than the statutory period, and until the same was obstructed it was open to general use by the public.

■ The fact that appellant leased or attempted to lease the use of part of the road across his leased land to logging companies is of no importance.

■ When a highway or road is once established by prescription, such establishment vests in the public an easement in, or right to use, the land over which the road runs for highway purposes; and the public cannot be divested of this right save by vacation or abandonment of the highway in the manner prescribed by law. 39 C.J.S., Highways, § 19, p. 937, Sec. 40–104, I.C.

■ In the situation before us an easement for the road was acquired prior to the time the patent was issued and the owner of the land takes the title subject to such easement. King v. Brown, 59 N.M. 325, 284 P.2d 214; 50 C.J. 962, Sec. 159; 73 C.J.S., Public Lands, § 85.

■ That a prescriptive road existed and exists across the land where the obstruction was placed by appellant is supported by the following cases: Kosanke v. Kopp, 74 Idaho 302, 261 P.2d 815; State v. Berg, 28 Idaho 724, 155 P. 968. The road having been once established it would have to have been abandoned for a period of five years before it ceased to be a highway. Sec. 40–104, I.C.

Appellant assigns as error the over-ruling of defendant's objection to the question propounded to the witness Swindell: "Did you ever see any no trespass signs?". The witness had testified that he had used the road in question for a number of years, had hauled logs over it without interference prior to the time the obstruction was placed in the road. Objection was properly overruled.

The court also overruled an objection to the question: "Was this particular road in controversy open to the public?". The witness was shown to be in a position to know, and the question called for a fact not a conclusion. The objection was properly overruled. If error, it is immaterial and no ground for reversal.

Appellant objected to the introduction in evidence of State's exhibit No. 9, which is a map prepared by the county surveyor showing the roads and their classification in Gem County, and the general geographical location of the road in question. It was not contended by the State that the map had been recorded as a county road map of Gem County. The road which was obstructed by appellant was established as a prescriptive public road by other evidence. The map also showed other roads of the county and their connecting link. The map was properly admitted in evidence.

Appellant assigns as error the refusal of the court to give requested instructions Nos. 5, 6, 7 and 9.

Instruction No. 5 advised the jury that working the road for five years at widely spaced intervals, at different and separate points, is insufficient to create a public road and that the work required to be done by the county is sufficient amount of work each year for five years as is reasonably necessary to keep the road in question in passable condition and in a reasonable state of repair. The requested matter was fully covered by instructions Nos. 10, 11, 12 and 13 given.

Requested instruction No. 6: "You are instructed that by the term 'public expense' is meant at the expense of the county". No authority to sustain the contention is cited. A road could be worked and kept up at public expense by a highway district, road district, the county, the State Highway Department, the United States, or other taxing unit organized, among other things, to build and maintain public highways. The instruction was properly refused.

Requested instruction No. 7 had to do with dividing the county into suitable road districts and the duties of the Board of County Commissioners in this regard. The instruction requested was not pertinent to the issues and was properly refused.

Requested instruction No. 9 was to the effect that maintaining of gates along some portions of the road was strong evidence it was not a public road. The road having

been established by prescription it could only cease to be a public road by abandonment as provided by law. Sec. 40–104, I.C.

▮ The fact that at some time someone owning property through which the road ran placed an unlocked gate across the road is not of sufficient significance as to require the giving of such instruction. Rhodes v. Halverson, 120 Wis. 99, 97 N.W. 514.

▮ In a supplemental brief appellant assigns as error the refusal of the court to give instruction No. 2, which is to the effect that if appellant believed the road in which the obstruction was placed was a private road and not a public road, he was incapable because of lack of criminal intent of committing the crime charged. Such is not the law. Wicked, wilful or criminal intent to violate the statute under which appellant was prosecuted is not an essential ingredient of the crime. The criminal act complained of by the State is malum prohibitum. The only inquiry is "has the law been violated?". State v. Keller, 8 Idaho 699, 70 P. 1051, 1059. See also State v. Sterrett, 35 Idaho 580, 207 P. 1071. A wilful act, intentionally done, cannot be excused because the appellant believed, if he did, that the road was a private one. Further, the testimony sustains the finding of the jury to the effect that appellant knew, or should have known, that the obstruction complained of was placed in a public highway.

If appellant had the right to block the road or obstruct it where the road crossed his or his relatives' land, every other person through whose land the road runs would have the same right, and all persons living in the vicinity of the road and having occasion to use it, and others, would be prevented from doing so, except by permission of those through whose land the road runs.

Other contentions made by appellant have been considered and are without merit, and will not be further discussed.

▮ The jury was fully and fairly instructed on all issues and we are of the opinion that the testimony sustains the verdict of the jury and no reversible errors were committed. Judgment is affirmed.

PORTER and McQUADE, JJ., concur.

TAYLOR, J., concurs in the conclusion reached.

SMITH, Justice (dissenting).

I am unable to agree with the majority opinion. While I feel that the evidence is insufficient to sustain the verdict and the judgment based thereon, nevertheless both the majority opinion and appellant's assignments of error require my more extended dissent in the light of a detailed review of the record.

I feel, contra to the majority opinion, that the trial court erred in certain of its rulings on the admission of evidence and in giving

certain jury instructions. I feel also that the trial court erred in refusing to give certain of appellant's requested jury instructions; for by refusing such requested instructions, the trial court *refused to allow appellant's theory of the case* to be submitted to the jury.

The road involved, leading from Ola northerly up Squaw Creek to the Third Fork Guard Station, extends through the patented lands of Robinette and Nesbitt. The State attempted to trace history of the road or "route" back to 1895; the State showed that a Mrs. De Masters, then 11 years old, a lady of 75 years at the time of the trial, rode horseback from Ola to a point somewhere north of Crane Creek intersection over what she stated to be "the same route we travel now." Appellant's father was acquainted with the road as far back as 1910 when, as he stated, "it was merely a trail that you could get over with a wagon." Since 1916, until recent years, there were five gates maintained across the road where it crossed lands belonging to settlers. In the last few years three gates were maintained; one at the northerly and upper portion of the Nesbitt land, adjoining the forest lands, replaced during the year 1955 with a cattle guard; the second gate at the southerly portion of the Nesbitt land adjoining the Robinette land, and the third at the southerly portion of the Robinette land.

The main improvements in the road were made by the Nesbitts and other settlers in the vicinity during 1925 on the Nesbitt homesteaded land. From that time on, the road was maintained almost entirely by settlers who used it, and by the forest service which also contributed work mostly in drainage of the road, averaging in value about $10 to $15 a year. The county at times performed some grading work on the road in exchange for work performed elsewhere by the forest service for the county; also, the county at times performed such work at the request of settlers in return for work to be performed by them for the county. The record also shows, that certain road employees of the county performed some work on the road with a grader during 1944, 1948, 1949, 1954 and 1955.

During 1953 the county hired appellant and his caterpillar tractor to go to a locality above the Three Fork Guard Station to bring out a grader belonging to the county, in which instance appellant had to remove some débris from the road in order to arrive at the tractor and bring it out.

Former County Commissioners for the district, in which the road is situate, and former road supervisors were able to cover the periods of 1923–1924, 1927–1937, and 1939–1955. Their testimony is to the effect that if any county employee performed any work on the road, as county work, such was without the authority or knowledge of the County Commissioners. Particularly was such true of the work allegedly performed on the road by county employees

during the years 1944, 1948, 1954 and 1955; county employees who asserted that they performed grading on the road during those years admitted that any such work was done without authority of the Board of County Commissioners.

Mr. Sutton, a present County Commissioner living at Ola, and a Commissioner during the past 8 years, stated that the work performed on the road in 1949 was at the request of the forest service.

The County Commissioners did not consider the road as a public road. The road was never laid out or recorded by order of the Board of County Commissioners.

The road was used many years by the people living in the vicinity, by the forest service and by hunters and fishermen, although in conformity with the wishes and regulations imposed by appellant and those whose lands the road traversed, that the gates be kept closed on account of the livestock.

One of the reasons why the difficulty arose in the case here, was because truckers hauling logs for lumber companies left the gates open. Additionally, the heavy logging trucks caused considerable dust to settle on appellant's hay; also the loggers attempted to change the course of the road through appellant's fields. Appellant on July 20, 1955, temporarily blocked the road near his south gate until by the next day he had obtained agreements of temporary easement from two lumber companies. The combined consideration therefor was some $215 as the estimated expense of installing a cattle guard, and as damage from the dust.

Appellant was familiar with all the fences which fenced the Nesbitt lands and with the gates across the road in question. In no case was the land subject to overflow to such an extent as to remove the fences. I.C. § 40–906.

Appellant testified without objection that he honestly believed under the circumstances that the road was a private road and that he had a right to insist upon certain rules and regulations over the road; also, that until the pending matter came up he had never heard of anyone questioning his right to insist that the gates be maintained and be kept closed.

Appellant, by his specifications of error, while he seriously questions the sufficiency of the evidence to sustain the verdict, strenuously contends error of the trial court in refusing to give certain of appellant's requested instructions designed to submit appellant's theory of the case to the jury.

The burden was on the State to prove beyond a reasonable doubt that the road in question was a public road. Appellant defended on the theory that the road was private and that therefore the case could not be submitted to the jury solely on the State's theory of the case, nor without submission to the jury of the theory of the defense. . . .

At the outset the State advanced the proposition as applicable herein that prior to 1893, Rev.Stat.1887, sec. 851, provided for the establishment of roads solely by prescriptive use for a period of five years. In 1893 such statute was amended to read as now found in I.C. § 40–103, the difference being that in addition to prescriptive use the road must be worked and kept up at "the expense of the public."

Mention of such purely statutory doctrine, as it existed prior to 1893, by the Court in the majority opinion, is *obiter dictum,* since the Court fails to show any application herein of that doctrine. The difficulty which makes it absolutely inapplicable herein is that there isn't any evidence to support it. The evidence upon which the State seeks to rely in such regard is, that Mrs. De Masters, 72 years of age, when this case was tried during April 1955, was 9 years old when she *commenced living in Ola,* which mathematically calculated, was during the year 1893; that she rode horseback over a portion of the route of the present road to somewhere above the Crane Creek junction, when she was 11 years which, mathematically calculated, was during the year 1895. *The record is devoid of any evidence concerning such route or road prior to the year 1895.* It therefore follows that the law as it existed in 1893 and prior thereto, as to roads becoming such when so used for the prescriptive period of five years, cannot be applied herein.

The next proposition that the majority opinion advances is, that it is not required that a prescriptive road be worked for five consecutive years throughout its entire length but only as needed when necessary for the statutory period. The difficulty with attempting to apply that premise herein is, that there is sufficient showing in the record of work performed on the road continuously during the years, at least from the year 1925 to the time of the trial, by the settlers and other residents in the vicinity and by the forest service; and when performed by the county, such work was almost entirely in exchange for work of the settlers and residents, and forest service, to be performed by them elsewhere for the county. Hence the record fulfills the requisite of needed and necessary work continuously performed on the road for many years, *but not by the county* for any consecutive period of five years, and therefore *not at public expense.*

I.C. § 40–103 reads as follows:

"Recorded and worked highways.— Roads laid out and recorded as highways, by order of the board of commissioners, and all roads used as such for a period of five years, *provided the latter shall have been worked and kept up at the expense of the public, or located and recorded by order of the board of commissioners,* are highways. Whenever any corporation owning a toll bridge, or a turnpike, plank, or

common wagon road is dissolved, or discontinues the road or bridge, or has expired by limitation, the bridge or road becomes a highway." (Italicized portion, the 1893 amendment.)

The effect of the 1893 amendment was to add only the requirement that the roads "kept up at the expense of the public" are highways. The requirement that roads located and recorded by order of the board of commissioners are highways, was already a part of such section of the statute prior to the 1893 amendment.

The record shows that the road under consideration here totaled about five and one-half miles in length, some in a mountainous area, necessitating considerable work to keep it up, in fairly passable condition. The people who lived in that community performed the large bulk of the work in maintaining the road, and the work performed by the county as such for which it did not require reimbursement by exchange of work, was practically nil. Nowhere does the record support the proposition that the road was kept up by the county for the required prescriptive period.

The requirement of I.C. § 40–103 that in order to constitute as highways, unrecorded roads used for the prescriptive period, kept up at the expense of the public, means at the expense of the county. Such is borne out by I.C. § 40–402 defining highways; also by I.C. § 40–109, subd. (b) defining the county road system,—and the road under consideration here is not situate within a municipal street system, and admittedly is not included within a state highway system; also borne out by I.C. § 40–501 relating to duties of the county commissioners to be defined by proper ordinances, and particularly subds. 1, 2, 3, and 4 thereof which have remained unchanged in meaning since originally enacted in 1885 to the present time; subdivision 3 requires the county commissioners to cause to be recorded as highways such roads as have become such by use or abandonment to the public; and subdivision 2 requires such commissioners to cause to be laid out, recorded, opened and *worked,* such highways as are necessary for public convenience; and by subdivision 4, the county commissioners may abolish or abandon roads or highways deemed unnecessary; also borne out by I.C. § 40–503 which provides exclusive supervision and jurisdiction in the board of county commissioners in each county over its county roads and highways except such as are located within incorporated cities and towns and within highway and good road districts.

The sections of the statute referred to place all county roads under the jurisdiction of the county acting through its commissioners including the working and maintenance of such roads, which, if done, of necessity would have to be at county expense; and no agency, such as the forest service by performance of work on a private road could thereby impose upon the county the burden of thereafter maintaining

that road, which would be a county burden at public expense, if a county road.

It therefore follows that the trial court committed error in refusing to give appellant's requested instruction No. 5, designed to instruct the jury that roads used for a period of 5 years were highways, provided they have been worked and kept up at the expense of the public; also, that the working of any such road for five years at widely spaced intervals and widely separated points is insufficient to create a public road, and that the work required to be done by the county is such an amount of work each year for five years as is reasonably necessary to keep the road in reasonably passable condition and in a reasonable state of repair.

It also follows that the trial court committed error in refusing to give appellant's requested instruction No. 6 designed to instruct the jury to the effect that the requirement that, in order to constitute highways, unrecorded roads shall be kept up at the expense of the public, means county expense.

See also Ross v. Swearingen, 39 Idaho 35, 225 P. 1021; Palmer v. Northern Pac. Ry. Co., 11 Idaho 583, 83 P. 947.

Appellant again points to I.C. § 40–501, subds. 2 and 3, which make it the plain statutory duty of the board of county commissioners to divide the county into suitable road districts, to cause to be laid out, recorded, opened and worked such highways as are necessary for public convenience, and to cause to be recorded as highways such roads as have become such by use or abandonment to the public.

Appellant's requested instruction No. 7 which the trial court refused to give, set out those referred to statutory duties of the county commissioners.

County officers are presumed to have done their duty, consequently the fact that the road in question had not been recorded would indicate it to be a private road, not a highway by prescription, and particularly so regarded by the county commissioners since they had not caused to be done any county work as such on the road, and in the four instances of county work performed without exchanged work, it was done without the authority or knowledge of the county commissioners.

The trial court erred in refusing to give appellant's requested instruction No. 7. I.C. § 40–501, subds. 2 and 3; Kootenai County v. Kinman, 56 Idaho 1, 47 P.2d 887.

Appellant next assigns error of the trial court in refusing to give appellant's requested instruction No. 9 to the effect that the gates maintained across the road in question constituted strong evidence that such road is not a public road, and that such evidence can only be overcome by strong evidence to the contrary.

The court not only refused to give such requested instruction, but failed in any wise to instruct concerning the undisputed

fact that gates at all times were maintained across the road under consideration here. Appellant was entitled to have his theory of the case submitted to the jury. Maintenance of those gates, as undisputedly shown by the evidence, was as a matter of law strong evidence that said road was not a public road. This rule is announced by a long line of harmonious decisions.

In Ross v. Swearingen, supra, 39 Idaho at page 39, 225 P. 1022, it is stated:

"The evidence was sufficient to justify the court in concluding that the road was not a public road, but that it was one over which people had traveled at will, but on which landowners through whose lands it extended had felt at liberty for many years to maintain and had maintained gates."

A succinct statement of the rule appears in Peasley v. Trosper, 103 Mont. 401, 64 P.2d 109, 111:

"The fact that the passage of a road has been for years barred by gates or other obstructions to be opened and closed by the parties passing over the land, has always been considered as strong evidence in support of a mere license to the public to pass over the designated way."

And in Smithers v. Fitch, 82 Cal. 153, 22 P. 935, 936, it is stated:

"Where gates are established, as in this case, across a road to be opened and closed by parties passing over the land, in the absence of a statute providing that such gates may be maintained on a public highway, it 'has always been considered strong evidence in support of a mere license to the public to pass over the designated way, and in rebuttal of a dedication to public use.' "

See also: Gray v. Haas, 98 Iowa 502, 67 N.W. 394, at page 395; Huffman v. Hall, 102 Cal. 26, 36 P. 417; State v. Cipra, 71 Kan. 714, 81 P. 488; Palmer v. Northern. Pac. Ry. Co., supra; De La Guerra v. Striedel, 159 Cal. 85, 112 P. 856; Stotts v. Dichdel, 70 Or. 86, 139 P. 932; People ex rel. Mayer v. San Luis Valley Land & Cattle Co., 90 Colo. 23, 5 P.2d 873; Maynard v. Bara, 96 Mont. 302, 30 P.2d 93.

The requested instruction did not constitute a comment on the evidence but merely stated the testimony which was undisputed that the gates were maintained and declared the applicable law under such circumstances, which I.C. § 19–2101, subd. 6, permits in language as follows:

"The judge must then charge the jury if requested by either party; he may state the testimony and declare the law, * * *."

The court therefore erred in failing to give appellant's requested jury instruction No. 9, or otherwise to instruct the jury, stating the legal effect of the maintenance of the gates.

Jury Instructions Nos. 11 and 12, given by the court, submitted to the jury for determination among other matters, the question of whether or not the road involved had been laid out and recorded by action of the board of county commissioners. There is no evidence whatever to support the proposition that the road had been so laid out and recorded. In other words those instructions were not predicated upon the evidence in the case, therefore they should not have been given. Lott v. Oregon Short Line R. Co., 23 Idaho 324, 130 P. 88; Nordquist v. W. A. Simons Co., 54 Idaho 21, 28 P.2d 207; Preston A. Blair Co. v. Rose, 56 Idaho 114, 51 P.2d 209; Vancil v. Anderson, 71 Idaho 95, 227 P.2d 74. Particularly, Jury Instructions Nos. 11 and 12 were prejudicial in view of the State's Exhibit No. 9 having been introduced in evidence, over appellant's objection. Said exhibit was a map which hung in the county garage upon which the road in question was indicated to be a county road. The jury may well have believed that, in view of the map having been admitted in evidence, the road was therefore laid out and recorded as a county road by the county commissioners.

With respect to State's Exhibit No. 9, aforesaid, the trial court erroneously allowed its admission in evidence since the exhibit did not tend to prove as a fact whether the road in question was a public road or highway. Further, the trial court erroneously overruled appellant's objection to the question propounded to the complaining witness Van Hoover, "Was this particular road open to the public?", as calling for a conclusion of the witness; also, whether the road was open to the public was a matter for determination by the jury, from all the facts and circumstances including the fact of maintenance of gates across the road, continuously during the many years shown.

Appellant assigns error of the trial court in refusing to give a portion of appellant's Requested Instruction No. 2; such portion of the requested instruction was designed to instruct the jury to find for appellant if they believed that he believed that the road, where he obstructed it was a private road instead of a public road. The requested instruction was grounded on the evidence, including appellant's testimony, particularly showing that the gates were maintained across the road on the Robinette and Nesbitt lands for the many years prior to the time of the trial; the requirement of keeping the gates closed by those who traveled the road; the upkeep of the road by those who used it, living and having business in the vicinity, and the abuses of the road and road privileges by the drivers of logging trucks. The requested instruction also was grounded on the following testimony elicited from appellant:

"Q. Now, did you honestly believe under the circumstances and what you

**16**

you knew about the proposition that that was a private road?

"A.   Yes.

"Q.   And that you had a right to insist upon certain rules and regulations over the road?

"A.   I did.

"Q.   And until this matter came up had you ever heard anyone question your right to insist that those gates be closed?

"A.   No."

I.C. § 18–114 reads:

"In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence."

and I.C. § 18–201 provides in part, as follows:

"All persons are capable of committing crimes, except those belonging to the following classes:

\*      \*      \*      \*      \*      \*

"4.   Persons who committed the act or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent."

In the case of State v. Sawyer, 54 Utah 275, 182 P. 206, 209, a larceny case, the trial court refused to allow the accused to testify concerning his intent and belief in possessing and claiming the allegedly stolen animal as his own property.   The appellate court, in holding that the trial court committed error, stated:

"We think the trial court's refusal to permit the defendant to testify as to his intent and belief in possessing and claiming the animal in question was clearly error.   Under the facts and circumstances as shown by this record the defendant should have been permitted to testify that he believed the animal he was accused of feloniously stealing and taking away was his property and his possession a rightful one.

"Under our Penal Code (Comp.Laws 1917, § 7908) 'in every crime or public offense, there must exist a union or joint operation of act and intent, or criminal negligence.'

"If the defendant honestly believed the animal in question to be his own property, that it was his intent and purpose of possessing and driving it into Nevada as such, then, even though the testimony conclusively shows he was mistaken and the animal was the property of another, he had no motive or purpose to commit crime, and *the question as to what the defendant honestly believed and intended was one of fact to be submitted to and determined by the jury.*"   (Emphasis supplied.)

In that case a jury instruction, a portion of which follows, was approved:

"You are instructed that where one in good faith takes the property of an-

other, honestly believing it to be his own, and that he has a right to its possession, he is exempt from the charge of larceny, there being no criminal intent and, therefore, if the jury believe from the evidence that the defendant * * * took the steer * * * honestly believing it to be his own, or that he had a right to its possession, the jury should find him not guilty; but the belief should be an honest one and not a mere pretense to shield him from conviction. * * *."

See also State v. Jones, 25 Idaho 587, 138 P. 1116; State v. Givens, 28 Idaho 253, 152 P. 1054; State v. Suennen, 36 Idaho 219, 222, 209 P. 1072.

The trial court erred in refusing to give appellant's Requested Instruction No. 2, or one of similar import.

The majority opinion holds that the referred to portion of appellant's Requested Instruction No. 2 is not the law applicable in this case. Said opinion advances the reason therefor, that wicked, wilful or criminal intent to violate the statute under which appellant was prosecuted, I.C. § 18–3907, is not an essential ingredient of the crime charged; that the criminal act complained of is malum prohibitum and that therefore, the only inquiry necessary is, "has the law been violated?" citing State v. Keller, 8 Idaho 699, 70 P. 1051; State v. Sterrett, 35 Idaho 580, 207 P. 1071.

The requirements of I.C. § 18–114 are not violated where an accused is charged and prosecuted for an offense only of the violation of a law per se; for inasmuch as everyone, including an accused, is presumed to know the law, he must be held to have committed the act in violation of the law with knowledge, and therefore the intent so to violate is implied and therefore supplied, as a matter of law; thereupon results the union or joint operation of act and intent. Likewise, the requirements of such section of the statute are met when it is necessary first to find a fact, as for instance a particular act committed, to which to apply the law, thereby to determine whether the fact, or the act committed, is in violation of the law; the fact found must fall within the ambit prohibited by the law, before the determination can follow of violation of the law. It is that distinction which the majority opinion fails to discern. Cases hereinafter referred to illustrate such distinction.

The interdicted act charged is as follows:

"That Homer *Nesbitt,* on or about the 20th day of July, 1955, in the County of Gem, and the State of Idaho, then and there being, *did* then and there wilfully, intentionally and unlawfully *obstruct a public road* in said county by placing a physical obstruction therein." (Emphasis supplied.)

18

It is admitted that appellant intended to and did obstruct *a road*. But it is not admitted that he intended to, or that he did, obstruct a public road. The crux of the case is whether appellant obstructed a public road or a private road.

Here, under the charge and the evidence it was absolutely necessary for the jury to determine a highly disputed question of fact, i. e., whether the road, which appellant temporarily blocked, was a public road beyond any reasonable doubt, or a private road as appellant insists, and the jury would first have to determine that appellant blocked a public road beyond any reasonable doubt, with *intent* so to do before the jury could make the determination of a violation of the law.

At once it becomes crystal clear that such disputed question of fact could only be determined by the jury, by consideration of the evidence and by the law applied thereto. by proper jury instructions designed to submit to the jury, not only the State's theory of the case, *but appellant's theory of the case as well*. But as hereinbefore pointed out, the trial court utterly ignored appellant's theory of the case by its refusal to give his requested instructions to the jury.

In People v. Monk, 8 Utah 35, 28 P. 1115, the accused, a judicial officer, was convicted of the offense of charging and collecting larger fees for recording mining instruments than as allowed by the positive law.

The accused defended on the theory that he honestly believed that he could charge the larger fees; and therefore no criminal intent existed; that without criminal intent he could *not* be held guilty of the offense charged. The Utah court pointed out that the rule contended for by the accused applies in cases "Where the party has been *honestly acting upon a supposed state of facts* that did not really exist." (Emphasis supplied.)

The court then stated:

"A distinction should be made when the act sought to be punished arises from a mistake of fact, rather than from a mistake of law. 'One who, while careful and circumspect, is led into a mistake of fact, and doing what would be in no way reprehensible were they what he supposed them to be, commits what, under the real facts, is a violation of a criminal statute, is guilty of no crime.' In such a case a criminal mind and intent is wanting. Bish.St.Const. § 132. And, according to most of the authorities, a mistake of fact is quite different in its effect and consequences, both civil and criminal, from ignorance or mistake of law; hence the rule that 'ignorance or mistake in point of fact is in nearly all cases of supposed offenses a sufficient excuse.' 1 Bish.Crim.Law (7th Ed.) § 301; 2 Bish.Crim.Law (7th Ed.), § 400. But this rule is held not to apply to a mistake or ignorance of

the law, for in general every person is presumed to know the law of the country in which he lives. 'And in no case can one enter a court of justice, to which he has been summoned in either a civil or criminal proceeding, with the sole and naked defense that when he did the thing complained of he did not know of the existence of the law which he violated,' nor that he believed the law to be different from what it really was * * * 1 Bish. Crim.Law, § 209; Com. v. Bagley, 7 Pick. [279] 281. Indeed, the strongest authorities cited by the learned counsel hold that, where the law which has been infringed upon was settled and plain, this maxim may be applied with vigor."

The Utah court then pointed out that the statute plainly fixed the amount of the fee legally collectible. Nothing was left to surmise or uncertainty. In other words there was no disputed fact required first to be determined, thereto to apply the law, thereby to determine whether the law had been violated.

In State v. Keller, 8 Idaho 699, 70 P. 1051, 1053, cited in the majority opinion, the accused was convicted of driving a band of sheep from the State of Utah into the State of Idaho, in violation of the Idaho's quarantine law under which the Governor had issued a quarantine proclamation, the validity of which was not questioned. The accused offered to show the absence of wilful intent, contending that there can be no crime, either large or small, without an evil mind. Answering that contention, our Court said:

"And so far as the evil mind or criminal intent of the defendant is concerned, the violation of said statute does not involve a criminal intent or evil mind, such as is necessary in the crimes of larceny, burglary, or murder. The statute under consideration does not provide that the driving into this state of sheep from infected districts, and contrary to the governor's proclamation, must be done maliciously, feloniously, or with a wicked mind or evil intent. *The law* under consideration (see Laws 1899, p. 452) *makes the act of driving certain sheep into the state unlawful,* without regard to the question of the intent of the person doing that act." (Emphasis supplied.)

The court then pointed out that the commission of the act under any circumstances with or without intent was made unlawful, and then pointed to decisions which hold that where the act is prohibited *as a matter of law,* i. e., malum prohibitum, the only inquiry is whether the law has been violated. Again, no disputed fact was required first to be determined to which to apply the law.

In State v. Sterrett, 35 Idaho 580, 207 P. 1071, 1072, also cited in the majority opin-

20

ion, the accused was convicted of the crime of transporting intoxicating liquor into a prohibition district in the state. There was no question concerning the fact that the goods transported were intoxicating liquor, or that they were intentionally transported. Again this court pointed out that it is competent for the legislature to prohibit the doing of a particular act and to provide a penalty for its violation, particularly, where the statute does not make the intent with which an act is done, an ingredient of the crime.

The court in arriving at its conclusion stated:

"* * * the Legislature has made the intentional transportation of intoxicating liquor, without legal authority, unlawful * * * and that the good intentions and good faith of the person transporting the liquor is immaterial."

Again, the court pointed out where the law forbids the commission of an act regardless of intent, the inquiry only need be, whether the law has been violated. Once more, no disputed fact was required first to be determined, thereto to apply the law.

The record does not indicate whether the trial court refused to give appellant's referred to requested instructions because the court deemed them erroneous. In any event if the trial court deemed any such requested instruction erroneous, nevertheless the request made it the clear duty of the court to give a correct instruction, or an instruction incorporating the court's views, on the matter attempted to be covered by the request. Rino v. Statewide Plumbing & Heating Co., 74 Idaho 374, 379, 262 P.2d 1003, and authorities therein cited.

Lastly, appellant questions the sufficiency of the evidence to support the verdict of the jury, and assigns as error the judgment of conviction entered thereon. Appellant's previous assignments of error aptly developed the truth of this last assignment.

First, there was no evidence tending to show that the road was used for a period of five years prior to the 1893 amendment to I.C. § 40-103;

Second, the road was not laid out and recorded as a public or county road by order of the board of county commissioners;

Third, the evidence fails to show that the road was worked and kept up for any continuous period of five years by the county;

Fourth, the evidence shows that whatever work was done on the road by the county, not in exchange for other work to be performed for the county, was done surreptitiously and without the knowledge, authority or consent of the board of county commissioners; such is true of the work, such as it was, performed on the road during the years 1944, 1948, 1954 and 1955.

The judgment of conviction will be reversed when there is insufficient evidence to

support it. State v. Drew, 48 Idaho 193, 280 P. 678; State v. Baker, 60 Idaho 488, 92 P.2d 133.

Appellant's last specification of error is well taken. The evidence is insufficient to support the verdict and the judgment entered thereon.

The judgment of the district court should be reversed, and the cause remanded with instructions to set said judgment aside and dismiss the action.